**ALLSTATE INSURANCE COMPANY**

v.

**GOVERNMENT EMPLOYEES
INS. CO. et al.**

Supreme Judicial Court of Maine.

March 12, 1970.

Thompson, Willard, Hewes & Smith, by Richard D. Hewes, Portland, for plaintiff.

Mahoney, Desmond, Robinson & Mahoney, by James R. Desmond and Lawrence P. Mahoney, Portland, for defendant, Government Employees Ins. Co.

Joseph Singer, Brunswick, for defendants DeLois.

Monaghan & Perkins, Portland, for defendants Robbins.

Orville T. Ranger, Brunswick, for defendant Wood.

Duane D. Fitzgerald, Bath, for defendant Mostek.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE and POMEROY JJ.

WEBBER, Justice.

On appeal by plaintiff. This was a complaint for declaratory judgment in essence seeking the interpretation of a clause contained in an automobile liability insurance policy issued by plaintiff to defendant Jess DeLois (DeLois, Sr.), and a determination as to whether or not plaintiff is required to afford coverage under the facts presented. Resolution of the primary issue will effectively resolve secondary issues presented by the complaint and by a cross-complaint brought by one of the defendants, the details of which need not be recited here.

One Mostek, a member of the armed forces stationed in Brunswick, was the owner of a Chevrolet car. Anticipating an extended tour of duty in Iceland, Mostek desired to place his car in the care of friends until he should return. He suggested such an arrangement to his friend John DeLois (John), minor child of DeLois, Sr. Mostek's proposal to John was that the latter should take the car and "use it just like your own, keeping it clean, the oil changed and things like that." Mostek imposed a condition that there should be no "drinking" in the car and John should not drive it if he had been "drinking." John approached his father who at first opposed the arrangement but agreed to discuss the matter with John and his friend. A conference was arranged at which DeLois, Sr. imposed certain restrictions of his own. Mostek's permission for John's use of the car was to be put in writing. DeLois, Sr. quotes himself as saying to the two young men, "The only time he will use it will be when he has to go run errands for us, whenever our car is in use and he can't use it." DeLois, Sr. then owned an Oldsmobile car which was the automobile primarily covered by plaintiff's policy.

On the eve of his departure Mostek left the car in a convenient location where by pre-arrangement John was to pick it up. With the car Mostek left a note addressed to "John D." which stated:

"2 May 67

I, Larry J. Mostek USN hereby give permission to John D. to use my car 67 Chev. for a period of about 2½ months. this is while I am away to Iceland. Will possible be home 15 July 1967.

He will treat the car as his own, and will furnish Regular gas, and change oil every 3,000 miles using 10–30 det. He will also keep the car up as far as cleanleyness etc. and he will also was(h) it once a week.

Insurance etc. is completely covered, and I trust John with it. So take care and see you 15 July.

Yours truly,

Larry"

John's understanding of the restrictions imposed by his father is shown by his testimony.

"He told me * * * that I couldn't expect to go pick up all my friends and drive them around and stuff, that it was to be used when it was needed as a second car and to do errands that were necessary when we didn't have the other car in the yard.

* * * * * *

He told Larry that I could use the car when it was needed, and that was it; that I wasn't, you know—his (Mostek's) girl friend was in town and I wasn't expected to go pick her up and take her around when she needed to go somewhere, that I had to use it at dad's discretion.

* * * * * *

Q. In other words, did your father specifically say that you could not use the car regularly?

A. Yes."

On the first evening that John had the car, he drove his father to his office at the latter's request. DeLois, Sr. testified that he elected to use the Mostek car even though his own car was available "so I could check it out for myself." John recalls using the car to pick up his family on one occasion but otherwise cannot recall whether or not he may have used it for short family errands during the two or three days which elapsed before the Chevrolet was involved in the accident which precipitated these proceedings. On Sunday, May 7, 1967 DeLois, Sr., John and his sister were preparing to attend church service. DeLois, Sr. suddenly felt dizzy and told John "to go ahead" and that "if he felt better, he would follow." Both cars were then available. John drove his sister to the church in the Mostek car and during their return trip, the accident occurred. It may be noted in passing that there were four licensed drivers in the DeLois household, all of whom made use of the family Oldsmobile.

Part 1 of Section I of the policy issued by Allstate to DeLois, Sr. provides liability protection to a relative (defined elsewhere as "a relative of the named insured who is a resident of the same household) while operating a non-owned automobile in these terms:

"The following persons are insured under this Part * * *

4. Any relative with respect to a non-owned private passenger automobile * * * *not regularly furnished for use of such relative.*" (Emphasis ours).

■ John was of course a "relative" of DeLois, Sr. as defined by the policy and the Chevrolet was as to John a non-owned automobile. It only remains to determine whether or not the vehicle was "regularly furnished for use" of John by Mostek within the meaning of the policy exclusion. If not, Allstate must afford coverage to John.

The Justice below made but two findings of "fact" which bear directly on this issue. They were stated in this form:

"I find as a fact that Lawrence Mostek had left his 1967 Chevrolet automobile on the property of Jess DeLois on Gurnet Road, Brunswick, Maine so that the vehicle would not be the subject of vandalism while Mr. Mostek was on deployment. I find as a fact that the 1967 Chevrolet Malibu owned by Lawrence Mostek was not regularly furnished for the use of John E. DeLois."

No other findings were made with respect to underlying facts which might lead to the conclusion that the car was "not regularly furnished for the use" of John *within the meaning of the policy,* which we take to have been the intended purport of the finding.

■ The legal meaning of the phrase as used in the policy is a question of law and whether the underlying facts bring the claim within the policy exclusion is likewise a matter of law. The essential and underlying facts are those dealing with the

arrangement between Mostek and the De-Lois family and the nature and extent of use contemplated by that arrangement. These facts are substantially undisputed in the evidence. We must therefore examine the evidence to see whether it and the only reasonable inferences to be drawn from it permit the conclusion that the permitted use was so limited and restricted as not to constitute the use "regularly furnished" as contemplated by the policy contract.

■ This leads us at the outset to consider the application of the familiar rule that findings of fact by a single justice will not be set aside unless "clearly erroneous." M.R.C.P., Rule 52(a). In Giokaris v. Kincaid (1960) Mo., 331 S.W.2d 633, 86 A.L.R.2d 925, this question arose with respect to the interprétation of the phrase, "or furnished for regular use," as employed in a policy exclusion. The court concluded that its equivalent of our "clearly erroneous" rule was not applicable where the facts were not in dispute. The court said, "The deference usually accorded the determination of a factual issue by a trial court because of its better position to judge of the credibility of witnesses appearing before it is not applicable to cases submitted upon depositions and exhibits." Where the facts were not in dispute we reached a like conclusion in In re Edwards' Estate (1965), 161 Me. 141, 210 A.2d 17.

■ The phrases "furnished for regular use" and "regularly furnished for use" are commonly employed in the exclusory sections of liability policies. They have proved a fruitful source of litigation and have been frequently considered and interpreted by courts. They form a part of what is often referred to as the "drive other car clause." It is recognized that these phrases should be interpreted in the light of their obvious purpose in the policy contract. That purpose was well stated in Anno. 86 A.L.R.2d 937 at 940, as follows:

"Purpose of provision. The purpose of the 'drive other cars' provision in an automobile liability policy is to cover *occasional or incidental* use of other cars without the payment of an additional premium, but to exclude the *habitual* use of other cars, *which would increase the risk* on the insurance company without a corresponding increase in the premium." (Emphasis ours)

This statement of purpose finds support in the cases assembled in the Annotation. Such was the understanding of the court in the often cited case of Lumbermen's Mutual Casualty Co. v. Pulsifer (1941) D.C. Me., 41 F.Supp. 249, 251 applying Maine law. It follows then that as we view the facts, it will be a matter of proper inquiry as to whether the use contemplated was to be merely occasional or incidental or was to be habitual or so frequent as to increase the insurance risk appreciably.

■ A use may be a "regular use" even though some restrictions or limitations are imposed on the use. In Home Ins. Co. v. Kennedy (1959) 2 Storey 42, 52 Del. 42, 152 A.2d 115, 118, the insured was not permitted to use his employer's truck for his personal or nonoccupational purposes, but otherwise he used it six days a week in his employer's business and to get to and from work. The defendant contended that this restriction to something less than indiscriminate, full and complete use prevented the use from constituting "regular use" within the meaning of the policy. The Delaware Court rejected that contention by saying, "if defendant is right, then he would be getting insurance on the Dodge and the pick-up truck for the price of the insurance on the Dodge alone. Every day, two vehicles could be on the road at one time, the Dodge driven by his wife, and the pick-up truck driven by him in his occupation, covered by one policy. This would be a bargain, and not one that was intended by the policy."

■ It is not alone actual use but the opportunity for use which will determine whether a vehicle has been "furnished for regular use." Moutry v. American Mut.

Liab. Ins. Co. (1967), 35 Wis.2d 652, 151 N.W.2d 630, 632 accepted the definition employed in Aler v. Travelers Indem. Co. (1950) D.C.Md., 92 F.Supp. 620, 623 in these terms:

> " 'The general purpose and effect of this provision of the policy is to give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile *which he frequently uses or has the opportunity to do so.*' (Emphasis supplied)."

This definition was adopted and applied in Campbell v. Aetna Casualty & Sur. Co. (1954), 4 Cir., 211 F.2d 732, 736.

So also in George B. Wallace Co. v. State Farm Mut. Auto. Ins. Co. (1960), 220 Or. 520, 349 P.2d 789, 792 the Court put the emphasis on the "right" to use rather than the "manner of use" by saying:

> "We are of the opinion, therefore, that the phrase 'furnished for regular use' as used in context does not imply the manner of use, that is, putting the automobile to the same uses to which an insured would use his own automobile, but implies a right to the regular use of the automobile *in the sense that there is an expressed or implied understanding with the owner of an automobile that the insured could have the use of the particular automobile * * * at such times as he desired, if available."* (Emphasis ours)

In Aler v. Travelers Indem. Co. (supra) the facts bear some resemblance to those in the instant case as they pertain to "regular use." In that case the owner permitted her car to be used interchangeably with insured's family car, the practice being to take whichever car happened to be parked in the driveway nearer to the street. The District Court put the emphasis on the facts (1) that the insured was at liberty to use the owner's car when desired, and (2) that that car was regularly and frequently used by members of the family. This in the Court's view constituted "regular use" within the meaning of the policy.

■ We note that the Justice below found only one underlying fact, that fact in effect being that Mostek left his car with John for safekeeping from vandalism and the like. There may be some intimation from the prominence given this fact that the Justice below was of the view that if the use permitted was primarily for the benefit of the owner, the car could not be deemed to be "regularly furnished for the use" of the nonowner. This contention rests upon what we may term the benefit-motive theory. We reject it for the same reasons advanced in Hartford Acc. & Indem. Co. v. Hiland (1965), 7 Cir., 349 F.2d 376, 377. The lower court had found that the car was furnished to the insured by his sister in order that he might break it in, this being for her own purpose and benefit. There was, however, no question but that while the insured had the car, he was free to drive it as he would his own both for pleasure and business. "The (lower) court thought, however, that the use made of the car and the time it was kept were immaterial, *the essential question being for whose benefit the car was supplied to (the insured)."* (Emphasis ours). The Circuit Court reversed and repudiated the benefit-motive theory as a "controlling factor" in determining "regular use." The Court said, "It is true that the term 'regular use' may be used in the sense of time, for example, steady as opposed to occasional; or in the sense of type of use, usual as against unusual. * * * We do not think * * * that the district court's interpretation of the term 'regular use,' requiring as an essential element thereof that the automobile have been supplied 'primarily for the insured's own use, benefit and convenience * * *' can be sustained. While the purpose for which the vehicle was supplied may be a relevant factor in determining whether it was for the in-

sured's regular use, * * *, the factor of motive bears no necessary relation to the risk assumed by the insurer under the policy, as do the factors of length and type of use, and it cannot be the controlling factor in the case before us."

■ In the instant case it is apparent that the restrictions on use were all imposed by DeLois, Sr. out of parental concern for the welfare of his son. Mostek did no more than acquiesce in the limitations stated by DeLois, Sr. The practical effect of the restrictions was to make the Chevrolet a "second car" to be used only for family needs at the "discretion" of DeLois, Sr. Although it was DeLois, Sr.'s announced intention to permit the use at such times as the family car was not available to meet family needs, it is clear that the "discretion" to be exercised by DeLois, Sr. was the controlling factor since on two of the three or more occasions when the Chevrolet was used, the Oldsmobile was available. Even with these restrictions imposed, the family need of a "second car" for family purposes alone could readily over a period of two months or more have reached the level of daily or even more frequent use. The DeLois family was afforded under the arrangement both the "right" and the "opportunity" to use the car to this extent with John acting as driver. Such frequent use could scarcely be deemed so casual, occasional or incidental as to satisfy the purpose of coverage. Without violating the limitations imposed by DeLois, Sr., there was opportunity for substantial enchancement of the risk under Allstate's plicy, a risk for which Allstate had not been compensated. We hold that under these circumstances the Chevrolet was "regularly furnished for use" of John DeLois within the meaning of the policy exclusion. It follows that the Allstate policy furnishes no coverage in connection with the accident here involved.

Appeal sustained. Remanded to the Superior Court for entry of a judgment, declaring the rights of the several parties, not inconsistent with this opinion.