## CIRCUIT COURT OF ARLINGTON COUNTY

Government Employees
Insurance Co.

v.

Elizabeth A. Berger,
Admrx., et al.

### August, 1978

### Case No. (Chancery) 28398

By JUDGE CHARLES S. RUSSELL

In this Declaratory Judgment proceeding, GEICO seeks an adjudication as to whether it is liable under a contract of insurance for damages in an action at law (No. 19029) brought by Elizabeth A. Berger, Administratrix of the Estate of Blake O. Berger, deceased, against Florentino A. Rumingan. GEICO had written a policy covering Rumingan's father, as named insured, and the father's personally owned automobile, which is not involved here. The parties stipulate that Rumingan lived with his father.

At the time of the accident, Rumingan was employed by the Embassy of Senegal as a chauffeur. The allegations in *Berger v. Rumingan* are to the effect that the Decedent's death was caused by the negligence of Florentino Rumingan while operating a car owned by the Embassy. The Embassy is clothed with diplomatic immunity and its vehicle, which was involved in the accident, was uninsured. Rumingan has been held, in *Commonwealth v. Rumingan*, C-11422, not entitled to diplomatic immunity at the time of the accident.

GEICO's policy, covering Rumingan's father's automobile, includes Rumingan as an "insured", since he is a resident of the same household as his father. The policy

covers "all sums which the insured shall become legally obligated to pay as damages because of. . . bodily injury. . . including death resulting therefrom. . . sustained by any person. . . arising out of the use of the owned automobile of any non-owned automobile." In the "Definitions" section of the policy a "non-owned automobile" is defined as "an automobile or trailer not owned by *or furnished for the regular use of* either the named insured *or any relative.*" (emphasis supplied)

The case turns upon the sole question of whether the Embassy car, which was involved in the accident while operated by Rumingan, was furnished "for his regular use" or not, within the meaning of the policy. If it was not, it was covered by the GEICO policy. If it was, GEICO has no responsibility to defend *Berger v. Rumingan.* In the latter event, the Plaintiff in the case will have a claim against the Home Indemnity Company, a party Defendant to this proceeding, which has uninsured motorist exposure upon a policy written upon an automobile owned by the Bergers.

The facts applicable to this case are not in dispute. Rumingan owned no automobile and was customarily driven to work from his father's home in Arlington to the residence of the Ambassador of Senegal on Woodland Drive in Northwest Washington by a friend of his father each morning. There were three Embassy owned automobiles, the Buick Le Sabre which was involved in the accident, a Lincoln Continental and a Chevrolet station wagon. Upon arrival at the Ambassador's residence, Rumingan would be directed to clean one of them, drive to Silver Springs, Maryland, and pick up a diplomat and take him to the Embassy. He took his orders from the Ambassador, the Ambassador's wife or the Ambassador's butler. Sometimes he would drive an Embassy child to a music lesson. He would then report to the Embassy and wait for instructions which might be given to him by any of the personnel in the office. He drove the Lincoln on only one occasion and the station wagon "sometimes." He drove the Buick more often than the others, but the pattern was unpredictable. He would take whichever car he was directed to take by his superiors. In the middle of the day he was permitted to take whichever car he was driving for that day, to go to lunch. He usually went by himself to a fast food restaurant about two miles from the Embassy. Sometimes he brought lunch back to some of the secreta-

ries. He testified at the hearing on August 24th that he used the Buick "about half of the time" for this purpose. (Sometimes he skipped lunch, sometimes he drove one of the other cars and occasionally he walked.)

On the date of the accident he had been directed to use the Buick. He had no money for lunch on that day and drove to his father's home in Arlington for a sandwich. The accident occurred while he was returning from his father's home through Arlington County to the Embassy, where he was expected to report back for further instructions after lunch. The permission to use the car for this purpose was tacit and continuing. He was not required to ask permission each day to drive it to lunch. On the day in question, Rumingan remembers that he was directed to carry some visitors' luggage into the Embassy and that when he had completed this task he was told by the Second Counsellor that he could go to lunch. Relying upon his standing permission to use his assigned car for that day, and because the car assigned to him that morning had been the Buick, he took it to Arlington without any express direction from his employers.

The exclusion of cars furnished "for regular use" from the clause covering "non-owned" automobiles is a common insurance provision. An extensive discussion of the judicial interpretations which have been made of this language is found at *Couch on Insurance 2d*, Section 45:1050-1065. While the courts have reached varying results, the majority view appears to be that this clause is unambiguous and that the burden of proving that an automobile was not furnished for regular use is upon the claimant. The clear purpose of the clause is to prevent the insured from obtaining coverage on two or more cars for the price of one, by the simple expedient of titling them in another person's name but enjoying their use without paying any additional premium. *Allstate v. GEICO*, (Maine) 263 A.2d 78.

> The concept of regular use does not necessarily require the furnishing of a single identified automobile, but extends to cars within a pool or class, any of which may be used by the person for whose use it is claimed the vehicle was furnished. . . . Thus a second-hand car driven home by an automobile agency salesman was an automobile "furnished for the regular

use" of the salesman within the exception of the automobile liability policy although it had never been driven by him before, where the salesman was permitted to use any second-hand automobile of the agency in making trips to and from his home at night. *Couch, supra,* 45:1059.

Where a car is furnished to an employee by an employer primarily for the employer's business, but available for the employee's occasional personal use, the furnishing of the car has usually been held to be within the "regular use" exclusionary clause. *Whaley v. Great American Insurance Co.,* (N.C.) 131 S.E.2d 491.

In a number of cases an automobile furnished by an employer to an employee for the purpose of doing the work or carrying out the plans of the employer has been deemed supplied to the employee for his regular use within the meaning of an exclusionary clause. The conclusion that an automobile is furnished for the regular use of an employee is strengthened where the employee is permitted to keep the automobile at his home, but the same conclusion has been reached where the employee's use of the vehicle was restricted.

Where an employer makes more than one car available to an employee, use of one or more of such vehicles by the employee may constitute a regular use thereof. *Couch, supra,* 45:1062.

The same conclusion is reached with respect to vehicles owned by governmental agencies and driven by government employees. *Couch, supra,* 45:1064.

Automobiles which are furnished only for infrequent or casual use are not within the exception, nor are those for which the user must request specific permission for each use. Indeed, in my view the latter distinction is crucial in Virginia since *State Farm Mutual v. Smith,* 206 Va. 280 (1965). The present case is nearly the antithesis of that case. There, a sailor departing for sea duty left the keys to his car with his wife, who could not drive. His sister-in-law, who was visiting in his home,

was given permission to drive it, and did so to assist his wife and children. The sister-in-law occasionally used it for her own purposes and was doing so when an accident occurred. However, she never felt that she was free to use it without requesting specific permission from the sailor's wife. She did not keep the keys, but left them on a table in the sailor's home. The sister-in-law's use of the car was occasional, casual and dependent upon express permission on each occasion. She did not have continuing control of the car. In these circumstances it was held that the car was not furnished for her "regular use."

In my view the Embassy of Senegal furnished the Buick Le Sabre which was involved in the accident for the "regular use" of Rumingan. He took its keys (or the keys to one of the other Embassy cars, as directed) from the Ambassador's residence each day and kept them with him all day. This car was under his continuing dominion and control throughout all working hours. He performed a variety of functions for his employer with the car, some of which were routine and required no instructions, and others in response to specific instructions. He was entitled to, and did in fact, take the car for his personal use for lunch on a regular basis without any necessity that he request specific permission to do so. Within the meaning that has been customarily accorded to this language, this constitutes such "regular use" of the automobile as to bring it within the exclusion of the GEICO policy.

GEICO had never contracted to insure the Embassy car and knew nothing of its existence. Indeed, if the position urged by the Defendants in this case were sustained, GEICO would find itself the unwitting insurer of all three automobiles owned by the Embassy of Senegal and operated within the District of Columbia by Rumingan, upon which there was no other insurance, all without the payment of any additional premium. This is the very situation which the exclusionary clause was designed to prevent. See *Rodenkirk v. State Farm*, (Ill.) 60 N.E.2d 269, 274, quoted with approval in *State Farm Mutual v. Smith*, 206 Va. 280 at 289 (1965).

Counsel for Complainant should present an appropriate Order of Declaratory Judgment.