## CIRCUIT COURT OF THE CITY OF RICHMOND

Paul Jones

v.

State Farm Mutual
Automobile Ins. Co.

January 7, 1988

Case No. LL-904-4

By JUDGE RANDALL G. JOHNSON

At issue in this action is the meaning of a phrase appearing in the medical payments provision of an automobile liability insurance policy issued to plaintiff by defendant. Specifically, was it a motor vehicle owned by plaintiff's employer and driven by plaintiff at the time of an accident "furnished for the regular use of" the plaintiff? If it was, the medical payments coverage does not apply, and plaintiff is not entitled to recover anything from defendant. If the vehicle was not "furnished for the regular use of" the plaintiff, defendant must pay plaintiff $15,000, the maximum coverage provided under the medical payments provision of the policy. The parties have entered into written stipulations of fact and have represented to the court that there are no material facts genuinely in dispute. Each has filed a motion for summary judgment seeking judgment in its favor.[1] The court has reviewed the stipulations and has considered the arguments of counsel and agrees that summary judgment is appropriate. For the reasons which follow, summary judgment will be entered in favor of the plaintiff.

---

[1] See Rule 3:18 of the Rules of the Supreme Court of Virginia.

The facts in this case can be easily set forth. On the morning of April 30, 1984, plaintiff was involved in an automobile accident in the City of Richmond in which he sustained serious bodily injury. At the time of the accident, plaintiff was acting within the scope of his employment with Southern Vending Company, where he was employed as a truck driver/route salesman, a job he had held for two or three years. It was one of Southern Vending's vehicles that plaintiff was driving at the time of the accident. Also at the time of the accident, plaintiff was the named insured under a "Family Automobile Policy" issued by defendant. The policy insured three vehicles owned by plaintiff and included a provision requiring defendant to pay all reasonable medical expenses incurred by plaintiff as a result of accident occurring "while occupying a non-owned automobile. . . ." The policy further defined a non-owned automobile as "an automobile or trailer not owned by or furnished for the regular use of. . . the named insured. . . ."[2] When defendant denied plaintiff's claim under the medical payments coverage of the policy, plaintiff filed this suit. The parties have stipulated that plaintiff's medical bills exceed the $15,000 maximum of the policy's medical payments coverage.

The vehicle driven by plaintiff at the time of the accident was one of four vehicles owned by Southern Vending. Plaintiff drove that specific vehicle nearly 100% of the time while he was working; that is, other employees of Southern Vending hardly ever drove that vehicle, and plaintiff hardly ever drove any other vehicle belonging to Southern Vending. Plaintiff drove the vehicle over 300 miles per week and was responsible for the vehicle's general maintenance and upkeep. Because plaintiff was "on call" twenty-four hours a day, he typically drove the vehicle home each evening in order that it be available for emergency service calls. Plaintiff used the vehicle the entire work day and had access to it at all times

---

[2] Although the vehicle plaintiff was driving at the time of the accident is described by the parties as a "three-quarter ton van," there is no contention by defendant that such vehicle is not an "automobile" as that term is used in the policy.

for business purposes. There was, however, no permission granted for personal use of the vehicle, nor did plaintiff use the vehicle for personal reasons without expressed approval from his employer. Based on these facts, defendant concluded that the vehicle plaintiff was driving at the time of the accident was not a "non-owned automobile" because it was "furnished for the regular use of" the plaintiff. The court does not agree.

In *State Farm Mutual Automobile Insurance Company v. Smith*, 206 Va. 280 (1965), the Supreme Court considered the meaning of the phrase "furnished to the named insured . . . for regular use" in a context similar to the one involved here. In *Smith*, a sailor on sea duty had left his car at home and had given permission to his wife's sister (his wife could not drive) to use the car "whenever it was needed." 206 Va. at 283. The wife's sister drove the car on approximately ten occasions, two or three of which were for her purposes, and the others being for the benefit of the wife. *Id.* The wife's sister never used the car without first asking the wife's permission, nor did she ever drive the vehicle while the husband, the owner, was at home. *Id.* at 287. Based on these facts, the court held that the car was not furnished for the regular use of the owner's sister-in-law:

> The permission for [the wife's sister] to drive the automobile for her own purposes was, in our opinion, incidental. It might be regarded as a courtesy to her for the service rendered to the Frost family. She drove the automobile only two or three times for her own purposes and, on those occasions, she was accompanied by her sister or her sister's friend.
>
> We interpret the language "furnished to the named insured for regular use" as referring to the furnishing for the insured's *own* purposes, and not the furnishing for the owner's or his family's purposes, with incidental permission for use by the insured for her purposes. 206 Va. at 288 (emphasis added).

This holding is controlling here. In the case at bar, the parties have stipulated that plaintiff did *not*

have permission to use his employer's vehicle for personal business, nor did plaintiff ever use the vehicle for personal business "without expressed approval from his employer." Stipulation No. 8. Moreover, in *Smith*, even occasional personal use was considered by the Court as "incidental" and not constituting a "furnish[ing] to the named insured for regular use" under the policy. Here, there is not even an occasional personal use. As in *Smith*, the instant plaintiff's use of the vehicle was not for his own benefit, but for the benefit of someone associated with the owner -- in *Smith*, the owner's wife; here, the owner itself.

The court's conclusion in this regard is not altered by the fact that plaintiff had been driving his employer's vehicle for two or three years while the insured in *Smith* had only driven her brother-in-law's car approximately ten times. There is nothing in the Court's opinion in *Smith* to indicate that the phrase "furnished to the named insured for regular use" means "frequent" use or "prolonged" use. Instead, it is the person for whose use the vehicle is provided that controls. Indeed, it has been held that a vehicle was "furnished for the regular use" of a salesman even though the specific vehicle involved in an accident had never been driven by that salesman before. *See Couch on Insurance 2d*, § 45:1059. Here, although the vehicle in question had been furnished to plaintiff for two or three years, it was never furnished to him for his "own purposes," but solely for the purposes of his employer. Accordingly, the subject exclusion does not apply.

Defendant cites several cases in its attempt to defeat plaintiff's claim. In *Geico v. Berger*, 4 Va. Cir. 470 (Chancery No. 28398, Cir. Ct. of Arlington County, 1978), then Judge (now Justice) Russell considered "regular use" language identical to that involved here. In that case, the named insured was employed by the Embassy of Senegal. As part of his employment, he was furnished an automobile. In holding that such automobile was furnished for the "regular use" of the insured, the court recited the following facts:

> [The named insured] took [the] keys (or the keys to one of the other Embassy cars, as direct-ed) from the Ambassador's residence each day

and kept them with him all day. This car was under his continuing dominion and control throughout all working hours. He performed a variety of functions for his employer with the car, some of which were routine and required no instructions, and others in response to specific instructions. *He was entitled to, and did in fact, take the car for his person use for lunch on a regular basis without any necessity that he request specific permission to do so.* 4 Va. Cir. at 474 (emphasis added).

This court believes that the last sentence of the above-quoted language from *Berger* clearly distinguishes that case from the case at bar. In *Berger*, the named insured regularly used his employer's vehicle for personal business; that is, to go to lunch. No *specific* permission was needed for such use, such permission being general and continuing. Here, "[t]here was no permission granted for personal use of the vehicle nor did plaintiff use the vehicle for personal reasons without expressed approval from his employer." Stipulation No. 8. Thus, while in *Berger* the employer furnished a vehicle to the insured for the insured's own purposes *as well as* the purposes of the employer, the vehicle in the case at bar was furnished to plaintiff solely for the employer's purposes.[3]

Defendant also cites several cases from other jurisdictions to support its position. While those cases do indeed hold as defendant would have the court hold here, the court feels itself bound by the holding of the Supreme Court of Virginia in *Smith*, *supra*, rather than by the holdings in cases from other jurisdictions. Indeed, even one of the cases cited by defendant recognizes that the rule enunciated in *Smith* is different from the rule in other jurisdictions:

---

[3] The court also notes the following language from Berger: "Where a car is furnished to an employee by an employer primarily for the employer's business, but available for the employee's occasional personal use, the furnishing of the car has usually been held to be within the 'regular use' exclusionary clause." Berger, supra at 473 (citing Whaley v. Great American Insurance Co., (N.C.) 131 S.E. 2d 491; emphasis added).

> We believe the Supreme Court of South Carolina would not place this [Smith's] construction upon the policy issued to [the named insured]. *Seaboard Fire & Marine Insurance Company v. Gibbs*, 392 F.2d 793 (4th Cir. 1968).

Finally, defendant cites *Quesenberry v. Nichols and Erie*, 208 Va. 667 (1968), in an apparent attempt to show that *Smith* has been at least tacitly overruled. A careful reading of that case, however, shows that it has no bearing on this case. In *Quesenberry*, the policy defined non-owned automobile as "an automobile or trailer (a) not owned by, or furnished for the regular use of the named insured by any government unit or agency. . . ." 208 Va. at 668-669. As the Court noted, "[t]he decision in this case turns upon the construction and application of clause (a). . . to the facts of the case." Rather than discussing the "regular use" phrase of that clause, however, the Court devoted the rest of its opinion to an analysis of whether the words "now owned by" referred to an automobile not owned by the named insured, or to an automobile not owned by any government unit or agency. It was held that they referred to the latter:

> We interpret clause (a) to define a "non-owned automobile" as an automobile not owned by any government unit or agency or an automobile not furnished for the regular use of the named insured by any government unit or agency. . . .
>
> [U]nder [the policy] an automobile or trailer owned by a government unit or agency is not a "non-owned automobile" and within the coverage afforded [the named insured]. Accordingly, we hold that he was not covered by his policy with Erie. . . . 208 Va. at 674.

As already noted, the Court's opinion contains absolutely no discussion of whether the subject vehicle was

"furnished for the regular use of the named insured."
Thus, the holding in that case is not applicable here.[4]

For the following reasons, judgment will be entered in favor of plaintiff in the sum of $15,000.

---

[4] To the extent defendant cites Quesenberry to show the insurance company's purpose in including the "regular use" exclusion, the court concludes that the express language of the policy controls. Moreover, the court notes that it has now been over twenty-two years since Smith was decided, and that the same language which resulted in a judgment against this defendant there is still being used in its policies. If defendant's purpose in including that language is not being honored by the judiciary, it has had ample opportunity to revise it.