147 F.3d 238
 AMICA MUTUAL INS. CO., Plaintiff-Appellee,
v.
Jong K. FRANKLIN, James E. Cohen, Administrator, Estate of
Daniel M. Cohen, Defendants,
Patricia Salvatore, James King, Marie L. Loughlin, Jerilynn
Rink, Administratrix, Estate of Evan Angell,
Defendants-Appellants.
 Docket Nos. 97-7119, 97-7139 and 97-7299.
 United States Court of Appeals,
Second Circuit.
 July 7, 1998.
 
 Lillian C. Gustilo, Bridgeport, CT (Richard A. Bieder, Koskoff, Koskoff & Bieder, P.C., Bridgeport, CT; Jonathan L. Mannina, Silver Golub & Teitell LLP, Stamford, CT, on the brief) for Defendants-Appellants.
 Daniel P. Scapellati, Hartford, CT (John B.Farley, Halloran & Sage, LLP, Hartford, CT, on the brief) for Plaintiff-Appellee.
 Before: MINER and PARKER, Circuit Judges, and DEARIE, District Judge.*
 PARKER, Circuit Judge:
 
 I. BACKGROUND
 
 1
 This appeal arises from a grant of summary judgment in favor of Amica Mutual Insurance Company ("Amica") in a declaratory judgment action wherein Amica sought and received a declaration of non-liability for the actions of Jong Franklin under two of Amica's policies which provided coverage to its insured Louis Forgione. On November 10, 1991, a fatal automobile accident occurred when sixteen-year old Jong Franklin ("Franklin") was driving with two friends and lost control of the car, crashing into another vehicle in which there were three passengers. The crash killed Evan Angell and Daniel Cohen, Franklin's passengers, and injured Marie Loughlin, the driver of the other car, and her passengers, Patricia Salvatore and James King. Appellant Jerilynn Rink is the administratrix of the estate of Evan Angell. The estate of Daniel Cohen is not a party to this appeal. The automobile driven by Franklin was owned by the estate of Franklin's deceased father.
 
 
 2
 In order to fully appreciate the controversy between the parties, we must begin with a discussion of events preceding the accident. On October 27, 1991, Franklin's adoptive father, the Reverend Robert Franklin, died. Reverend Franklin's will named Louis and Cecilia Forgione, members of his church, as guardians of his adopted son. The will was drafted by Reverend Franklin's attorney, W. Glenn Major ("Major"), who was alternatively named as Franklin's guardian in the event the Forgiones did not accept guardianship and who was the executor of Reverend Franklin's estate.
 
 
 3
 The Forgiones were not aware that Reverend Franklin had named them as his son's guardians until approximately one week before Reverend Franklin's death. Once informed, they had serious reservations about undertaking the responsibility. Upon Reverend Franklin's death, the Forgiones signed an "Application/Appointment of Guardian of the Estate" (the "Application") to be appointed guardians of Franklin. Franklin also signed the Application, choosing the Forgiones as guardians.
 
 
 4
 Franklin continued to live at the rectory the week following his father's death, from October 27 to November 3, 1991. Franklin used the car to go to and from school and for other purposes. He had his own set of keys. Franklin was the only person to drive the car after his father's death. Major did not limit Franklin's use of the car in any way. From November 4-7, 1991, Franklin stayed at the Forgiones' house. He returned to the rectory on November 8th to pack his belongings and slept there the nights of November 8th and 9th. The accident occurred on November 10, 1991.
 
 
 5
 On the date of the accident, the Forgiones were covered by two liability insurance policies which had been issued by appellee Amica. They held an automobile liability insurance policy and a personal excess (umbrella) liability policy. After the accident, Franklin was sued by appellants for his alleged negligence in causing the accident. Franklin, in turn, made a demand upon Amica to provide liability coverage under the Forgiones' policies. Amica denied that Franklin is an insured under either of the policies; however, it provided Franklin with a defense in each of the lawsuits under a complete reservation of rights.
 
 
 6
 Thereafter, Amica brought the action below seeking a declaratory judgment that it has no duty to defend or indemnify Franklin in the various suits. The injured parties and the representatives of the deceased (appellants herein) were named as codefendants. The parties filed cross-motions for summary judgment, claiming there were no genuine issues of material fact.
 
 
 7
 In its motion, Amica claimed that Franklin is not an insured under the automobile or personal excess liability policies issued to Forgione because Franklin was not a "family member," or a "household resident," as is required under the terms of the policies. In addition, Amica argued that there was no coverage under either policy because the automobile Franklin was driving on November 10, 1991 was furnished for his "regular use," and is therefore subject to the "regular-use exclusion" contained in each of the policies.
 
 
 8
 The district court concluded that the "regular use" provisions did not apply because there was no arrangement as to how long Franklin would have unrestricted use of the car. The court then found that the relationship between the Forgiones and Franklin was too tentative and tenuous to qualify Franklin as a "family member" covered under the automobile liability policy. Likewise, the court concluded that Franklin was not a "resident" of the Forgiones' household because the record did not demonstrate the "close, family-like relationship" which Connecticut law requires in order to find residency. See Middlesex Mut. Assurance Co. v. Walsh, 218 Conn. 681, 685, 590 A.2d 957, 960 (1991). Summary judgment was then granted to Amica in light of Franklin's failure to qualify for coverage under either policy.
 
 
 9
 The district court entered summary judgment in favor of Amica on July 17, 1996. On July 26, 1996, Salvatore filed a Motion for Reconsideration, contending that Connecticut General Statutes Section 45a-596 creates a guardian/ward relationship immediately upon the written acceptance of guardianship by a testamentary guardian. It was further contended that the signing by the Forgiones of the Application constituted such written acceptance. Joining in the Motion for Reconsideration were Rink and Cohen. Franklin did not file a Motion for Reconsideration. The district court determined that the motion did not demonstrate any new law or matters of fact which would constitute grounds for vacating the court's earlier judgment, and denied the Motion for Reconsideration in its entirety on January 3, 1997.
 
 
 10
 In January 1997, Salvatore, King, Loughlin, and Rink filed their Notice of Appeal. Neither Cohen nor Franklin appealed. Appellants contend that the district court improperly denied the Motion for Reconsideration because Franklin is a statutory ward. Appellants also contend that the district court erred in determining that Franklin is not a de facto foster child or ward of the Forgiones, and therefore that Franklin was not covered under the Forgiones' automobile liability policy. Additionally, appellants contend that the district court erred in determining that Franklin was not a "resident" of the household of the Forgiones within the meaning of either the automobile liability policy or the personal excess liability policy. In the alternative, appellants argue that the district court improperly granted summary judgment because their contentions present genuine issues of material fact that must be resolved at trial.
 
 II. DISCUSSION
 
 11
 Because we find that the "regular use" provisions of the policies exclude Franklin from coverage, we do not reach the issue ultimately relied on by the district court in its opinion and disputed by appellants herein, of Franklin's coverage as a "family member" or "resident" under the policies.
 
 A. The Regular Use Provision
 
 12
 The "regular use" provision of the automobile liability policy states as follows:
 
 
 13
 We do not provide Liability Coverage for the ownership, maintenance or use of ... [a]ny vehicle, other than your covered auto, which is ... furnished or available for the regular use of any family member."
 
 
 14
 The personal excess liability policy provides, in relevant part:
 
 
 15
 We do not provide coverage for injury or damage arising from the ownership, maintenance, operation, use, loading or unloading of ... a covered person's autos or those furnished for that person's regular use .[1]
 
 
 16
 In discussing the "regular use" provision, a common exclusion in automobile insurance policies, the primary treatise on insurance notes the purpose of the exclusion of coverage for cars regularly used is to provide coverage for
 
 
 17
 occasional or incidental use of other cars without the payment of an additional premium, but to exclude coverage for the habitual use of other cars, which would increase the risk of the insurer without a corresponding increase in the premium.
 
 
 18
 12A George C. Couch et al., Couch Cyclopedia of Insurance Law § 45:1074 (2d rev. ed.1981). As the First Circuit has stated,
 
 
 19
 a policy which would give to an insured who simply took out a policy on a single owned car, coverage on any number of cars not owned by him, but furnished for his regular use, just as if he owned them, would be ruinous to an insurance company.... [W]here more than one owned automobile is included, as a rule the insurance premium is larger.
 
 
 20
 Volpe v. Prudential Property & Cas. Ins. Co., 802 F.2d 1, 3 (1st Cir.1986) (quoting Globe Indem. Co. v. Teixeira, 230 F.Supp. 451, 455 (D.Hawai'i 1964), aff'd, 349 F.2d 502 (9th Cir.1965)).
 
 
 21
 The practical effect of these policy pronouncements to our analysis is the recognition that the insurance contract contains an implicit notion of the reasonable expectation of the parties. In assessing the particular facts of this case, we will consider whether the Forgiones (or Franklin) would reasonably have expected to pay an extra premium to cover Franklin's use of his father's car and whether Amica would have expected payment of another premium in light of the type of use by Franklin of the car. See Volpe, 802 F.2d at 4.
 
 B. Relevant Case Law
 
 22
 Because our jurisdiction is based on diversity of citizenship of the parties, we apply the substantive law of Connecticut on outcome determinative issues. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); McCarthy v. Olin Corp., 119 F.3d 148, 153 (2d Cir.1997). Although we would generally rely heavily on the decisions of the Connecticut Supreme Court or the lower Connecticut courts, where, as here, there is no Connecticut case law addressing the substantive issue, "the job of the federal courts is carefully to predict how the highest court of [Connecticut] would resolve the uncertainty or ambiguity." McCarthy, 119 F.3d at 153 (quotations omitted); See also In re Brooklyn Navy Yard Asbestos Litig., 971 F.2d 831, 850 (2d Cir.1992). In so doing, we may consider relevant cases from jurisdictions other than Connecticut. See Bensmiller v. E.I. Dupont de Nemours & Co., 47 F.3d 79, 82 (2d Cir.1995).
 
 
 23
 Courts uniformly have held that the applicability of the regular use exclusion turns on the "particular facts and circumstances in each case." Egle v. United Serv. Auto. Assoc., 158 A.D.2d 661, 662-663, 551 N.Y.S.2d 954, 955 (2d Dep't 1990)(quoting Liberty Mut. Ins. Co. v. Sentry Ins., 130 A.D.2d 629, 630, 515 N.Y.S.2d 557, 558 (2d Dep't 1987)).[2] The undisputed facts relevant to our inquiry are: (1) Attorney Major, the Executor of Reverend Franklin's estate, placed no limitations or restrictions on Franklin's use of Reverend Franklin's car; (2) Franklin did not discuss with Attorney Major how long he would have access to the car; and (3) Franklin had unrestricted use of the car from the time of Reverend Franklin's death until the time of the accident, which was approximately two weeks. Amica v. Franklin, No. 3:94CV1724, slip op. at 4-5 (D.Conn. July 16, 1996).
 
 
 24
 In holding that Franklin's use of his father's car did not constitute "regular use," the district court gleaned from the case law of other jurisdictions the general rule that where a car was available for "a short and predetermined amount of time, even if use during that period is unrestricted, it is not subject to the regular use exclusion." Franklin, slip op. at 8. The district court then relied principally on Knack v. Phillips, 134 Ill.App.3d 117, 89 Ill.Dec. 185, 479 N.E.2d 1191 (1985), a decision from the Illinois Appellate Court finding that the regular use exclusion was not applicable where the insured's fiance loaned the insured his car for use during the week, but not on weekends, over a period of a couple of weeks. The district court found it significant that the Knack court, in holding that the use was not regular, focused on the fact that there was no arrangement concerning how long the use of the vehicle would continue. Franklin, Slip op. at 9. Due to the lack of an arrangement between Franklin and Major as to the length of time Franklin could use the car, the district court held, in keeping with Knack, that Franklin's use was not regular.
 
 
 25
 We take issue with the district court's reliance on the Knack decision and the expected length of use of the car as the determinative factor. The analysis in regular use cases is driven by application of a variety of factors to the individual circumstances presented. No single factor is dispositive. Even in Knack other factors were considered important. For example there, unlike this case, the driver of the car was only allowed to use the car during the week and the car was returned to the owner over the weekend. The court found this more consistent with limited and casual use than regular use. See Knack, 89 Ill.Dec. 185, 479 N.E.2d at 1195.
 
 
 26
 A review of case law from other states reveals a host of indicia of "regular use" including: (1) blanket permission to use the car rather than having to ask permission for each use; (2) availability of a set of keys to the car; (3) continuous, steady, methodical use as opposed to occasional or special use; (4) the nature of the use (e.g. use for all purposes rather than solely business use); and (5) that the insured would reasonably have expected to pay an extra premium to cover the use of the car. See generally, Nationwide Mut. Ins. Co. v. Shoemaker, 965 F.Supp. 700, 706 (E.D.Pa.1997); 12A George C. Couch et al., Couch Cyclopedia of Insurance Law § 45:1074 (2d rev. ed.1981); see also 86 ALR 2d 952 § 6[b]. We have no reason to believe that the Connecticut courts would not also turn to these factors in analyzing the application of the "regular use" provision.
 
 
 27
 Considering these factors in light of the purposes of the "regular use" provision, we find that provision applicable and Franklin exempted from coverage. The undisputed facts show that Franklin had his own set of keys, used the car daily for all purposes (to travel to school, to run errands, to go back and forth between the Forgiones' house and the rectory), and did not have to ask permission from Major when he used the car. There was no indication that Franklin's use of the car would end within weeks or even months. Louis Forgione reasonably should have expected to pay an additional premium for Franklin's car had Franklin qualified as a member of the Forgiones' household under the policy.
 
 C. Public Policy Implications
 
 28
 We find unavailing appellants' argument that the "regular use" provision is void and unenforceable as against public policy. Appellants assert that the regulations of the Insurance Department list the only exclusions allowed under automobile insurance policies and the "regular use" exclusion is not included. The regulations relied on by appellants (and the controlling statute) make clear in a separate paragraph that the automobile insurance policy must designate by explicit description or appropriate reference the motor vehicles covered. See Conn. Agencies Regs. § 38a-334-5(a) (1997); see also, Conn. Gen.Stat. § 38a-334 (1997). We believe that the regular use provisions in the policies provide a sufficient description of what constitutes a covered or specified automobile.
 
 III. CONCLUSION
 
 29
 We hold that Franklin's use of the automobile constituted "regular use" and, therefore, he is not covered under the Forgiones' policy. The decision of the district court is therefore AFFIRMED based on the application of the "regular use" provision. We do not reach the issues ultimately relied upon by the district court.
 
 
 
 *
 Honorable Raymond J. Dearie, of the United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 The issue of whether the term "regular use" is ambiguous has been frequently raised and addressed by courts. See Volpe v. Prudential Property and Cas. Ins. Co., 802 F.2d 1, 2 (1st Cir.1986); Nationwide Mut. Ins. Co. v. Shoemaker, 965 F.Supp. 700, 703 (E.D.Penn.1997) and cases cited therein finding the term unambiguous. Appellants herein do not challenge the ambiguity of the term
 
 
 [2]
 Often this fact-based determination is reserved for the jury. However, in this case the parties filed cross motions for summary judgment claiming existence of no genuine issues of material fact