MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions
Decision:      2017 ME 58
Docket:        Oxf-16-50
Argued:        November 8, 2016
Decided:       March 28, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and <u>HUMPHREY</u>, JJ.


ESTATE OF REBECCA L. MASON et al.

v.

AMICA MUTUAL INSURANCE COMPANY


HUMPHREY, J.

[¶1]  The Estates of Rebecca L. Mason and Logan Dam (the Estates) appeal from summary judgments entered by the Superior Court (Oxford County, *Clifford, J.*) in favor of Amica Mutual Insurance Company (Amica) on the Estates' consolidated actions to reach and apply insurance money toward the satisfaction of judgments they obtained against Amica's insured.  *See* 24-A M.R.S. § 2904 (2016).  The trial court concluded that Amica is entitled to judgments as a matter of law on the Estates' complaints because a "regular use" exclusion in the insured's automobile insurance policy prohibits the Estates from reaching the insurance money.  We affirm the judgments.

## I. BACKGROUND

[¶2]    Viewing the evidence in the light most favorable to the nonprevailing parties, the Estates, the summary judgment record reveals the following undisputed facts.[1]  *See, e.g.*, *Estate of Frost*, 2016 ME 132, ¶ 15, 146 A.3d 118.  On January 7, 2012, in West Paris, Rebecca L. Mason and Logan Dam were passengers in a vehicle driven by Kristina I. Lowe.  Lowe negligently caused the vehicle to crash in a single-vehicle accident, and Mason and Dam died from injuries they sustained.[2]

[¶3]  The vehicle was owned by Lowe's friend, Dakota Larson.  Larson's driver's license had been suspended in November 2011, and Lowe had agreed to drive Larson to work, to school, and to visit friends.  When Lowe's own car broke down on December 23, 2011, Larson authorized her to use his car as if it was her own, as long as she continued to give him rides, until her car was fixed.[3]  Around the same time that Lowe's car broke down, Larson left town

---

[1]  The parties do not dispute the essential historical facts; however, they do assign different significance to those facts in the context of the applicable law.

[2]  We have previously addressed two appeals regarding the criminal charges and convictions that arose out of this accident.  *See State v. Lowe*, 2015 ME 124, 124 A.3d 156 (affirming Lowe's convictions of manslaughter and aggravated leaving the scene of a motor vehicle accident); *State v. Lowe*, 2013 ME 92, 81 A.3d 360 (affirming the trial court's decision to suppress certain evidence in the criminal proceedings against Lowe).

[3]  In their statement of material facts, the Estates asserted that Larson testified during a deposition that Lowe gave him rides using only her car until her car broke down.  Amica did not properly contradict that statement.  *See* M.R. Civ. P. 56(h)(4).  The Estates also asserted that Lowe

for several days.  He gave Lowe the only set of keys to his car, and Lowe used his car for her own purposes while he was gone.  When he returned, and until the accident on January 7, 2012, Lowe continued to use Larson's car to give him rides and for her own purposes.

[¶4]  Lowe required transportation for her full-time job and, while her car was unavailable, she did not have access to any vehicle other than Larson's.  She used Larson's car to drive to and from work, to visit relatives, to pick up friends, to go tanning, and to go to the gym.  She kept Larson's car at her family's home, and she paid for gas most of the time.

[¶5]  When the accident occurred, Lowe was a resident at the home of her mother, Melissa J. Stanley.  Stanley had a personal auto insurance policy issued by Amica that provided for $300,000 in liability coverage.  The policy excluded from coverage liability arising out of the use of a vehicle "furnished for the regular use of any family member."  The policy defined "family member" as "a person related to you by blood, marriage, or adoption, who is a resident of your household."

---

testified that until her car broke down, she gave Larson rides using both her car and Larson's car, depending on which was more convenient.  Amica admitted that statement.

4

[¶6]  After the accident, the Estates brought wrongful death actions against Lowe, and the parties stipulated to the entry of judgments against Lowe in favor of each of the Estates in the amount of one million dollars.

[¶7]  The action at issue in this appeal began when, in July 2014, the Estates filed separate reach-and-apply actions against Amica in the Superior Court (Oxford County) seeking to apply insurance money from Stanley's policy to the judgments against Lowe.  *See* 24-A M.R.S. § 2904.  On Amica's unopposed motion, the court (*Clifford, J.*) consolidated the cases.  The Estates jointly moved for summary judgment and Amica filed a cross-motion for summary judgment.  In a written order dated January 18, 2016, the court concluded as matter of law that the "regular use" exclusion in Stanley's policy applied to preclude coverage for Lowe's negligent use of Larson's car and that, therefore, the Estates could not reach and apply insurance money from Stanley's policy toward satisfaction of the judgments against Lowe.  The court therefore determined that Amica was entitled to judgments as a matter of law on the Estates' complaints, *see* M.R. Civ. P. 56(c), granted Amica's motion for summary judgment, and denied the Estates' motion for summary judgment. The Estates timely appealed.

## II. DISCUSSION

[¶8]  The Estates contend that based on the undisputed material facts, the "regular use" exclusion in Stanley's policy does not apply to preclude coverage for Lowe's negligent use of Larson's vehicle, and that the court therefore erred by entering summary judgments in Amica's favor.

> We review a ruling on cross-motions for summary judgment de novo, considering the properly presented evidence and any reasonable inferences that may be drawn therefrom in the light most favorable to the nonprevailing party, in order to determine whether there is a genuine issue of material fact and whether any party is entitled to a judgment as a matter of law.

*Frost*, 2016 ME 132, ¶ 15, 146 A.3d 118; *see* M.R. Civ. P. 56(c).  "Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment per se."  *Remmes v. Mark Travel Corp.*, 2015 ME 63, ¶ 19, 116 A.3d 466 (quotation marks omitted).  "When the material facts are not in dispute, we review de novo the trial court's interpretation and application of the relevant statutes and legal concepts."  *Id.*

[¶9]  "The interpretation of an insurance contract exclusion and its applicability is a matter of law reviewed de novo."  *Pease v. State Farm Mut. Auto. Ins. Co.*, 2007 ME 134, ¶ 7, 931 A.2d 1072; *see Allstate Ins. Co. v. Gov't Emps. Ins. Co.*, 263 A.2d 78, 80 (Me. 1970) ("[W]hether the underlying facts bring the claim within the ['regular use'] policy exclusion is . . . a matter of

law."). "Exclusions and exceptions in insurance policies are disfavored and are construed strictly against the insurer." *Pease*, 2007 ME 134, ¶ 7, 931 A.2d 1072 (quotation marks omitted).

[¶10] Stanley's policy excludes from coverage liability arising out of the use of a vehicle "furnished for the regular use of any family member." Because it is undisputed that Lowe is Stanley's "family member," the sole issue in this appeal is whether the vehicle Lowe was driving when the accident occurred was "furnished for [her] regular use."

[¶11] We interpret "regular use" exclusions consistent with their "obvious contractual purpose," which "is to cover *occasional or incidental* use of other cars without the payment of an additional premium, but to exclude the *habitual* use of other cars, which would increase the risk on the insurance company without a corresponding increase in the premium." *Acadia Ins. Co. v. Mascis*, 2001 ME 101, ¶ 11, 776 A.2d 617 (emphasis omitted) (quotation marks omitted). Stated another way,

> The general purpose and effect of [a "regular use" exclusion] is to give coverage to the insured while engaged in the *only infrequent or merely casual use* of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile *which he frequently uses or has the opportunity to do so*.

*Allstate*, 263 A.2d at 82 (first emphasis added) (quotation marks omitted).

[¶12]  In *Allstate*, a Navy servicemember "place[d] his car in the care of [a] friend[]" while he was away on duty for two and a half months, *id.* at 79, in order to protect the vehicle "from vandalism and the like," *id.* at 82.  The servicemember told the friend that he could use the car "as his own," but not if he had been drinking alcohol.  *Id.* at 79.  The friend's father also imposed restrictions on the use of the car.  *Id.* at 80.  The friend had access to the car for "two or three days" before he was involved in an accident while driving it.  *Id.*

[¶13]  We concluded that although the friend was an insured under his father's policy, a "regular use" exclusion in that policy precluded coverage for liability arising out of the friend's use of the servicemember's car.  *Id.* at 80, 83. We explained that "regular use" exclusions are meant to prevent an insured from receiving coverage for use of a vehicle without paying a premium for that coverage, and that "[a] use may be a 'regular use' even though some restrictions or limitations are imposed on the use."  *Id.* at 81; *see id.* at 83 ("Without violating the limitations imposed . . . there was opportunity for substantial [enhancement] of the risk under [the] policy, a risk for which [the] insurer] had not been compensated.").[4]

---

[4] The United States Court of Appeals for the First Circuit has noted:

[A] policy which would give to an insured who simply took out a policy on a single owned car, coverage on any number of cars not owned by him, but furnished for his

[¶14] We also discussed and rejected the "benefit-motive theory," the notion that a vehicle cannot be considered "furnished for regular use" if the arrangement primarily benefits the owner of the vehicle. *Id.* at 82-83. We held instead that although the parties' motivations in making the arrangement can be relevant to the analysis, the fact that the arrangement benefits the owner does not preclude application of a "regular use" exclusion where the use otherwise qualifies as "regular." *Id.* Although the friend's use was restricted and benefited the servicemember, the exclusion applied because the friend had "both the right and the opportunity" to use the car as his own, and "[s]uch frequent use could scarcely be deemed so casual, occasional or incidental as to satisfy the purpose of coverage." *Id.* at 83 (quotation marks omitted).

[¶15] In *Mascis*, under a different set of circumstances, we concluded that a "regular use" exclusion did not apply to preclude coverage. 2001 ME 101, ¶¶ 2-4, 10-11, 776 A.2d 617. In that case, the insured, who had only a learner's permit, drove her boyfriend's car frequently in order to gain driving

---

regular use, just as if he owned them, would be ruinous to an insurance company. Where more than one owned automobile is included, as a rule the insurance premium is larger. The exclusion therefore protects the insurer from multiple exposure to liability for which the insured pays only one premium.

*Volpe v. Prudential Prop. & Cas. Ins. Co.*, 802 F.2d 1, 3 (1st Cir. 1986) (alterations omitted) (citation omitted) (quotation marks omitted), *superseded by statute on other grounds as stated in Town of Allenstown v. Nat. Cas. Co.*, 36 F.3d 229, 231-32 (1st Cir. 1994).

experience. *Id.* ¶ 3. Although the boyfriend let the insured "drive when she wanted to," and she drove the car three to five times per week, she never drove the car without him, did not have the keys, and did not keep the vehicle in her possession. *Id.*

[¶16] We reiterated the legal concepts expressed in *Allstate*, *id.* ¶¶ 10-11, and referred favorably to a list of non-exhaustive factors that the United States Court of Appeals for the Second Circuit considers in making "regular use" determinations, *id.* ¶¶ 8 n.3, 11.[5] We noted that the insured "had neither an unrestricted right nor an unfettered opportunity to drive [the boyfriend's] vehicle," that her ability to drive the vehicle "was strictly limited by his permission and the time she spent with him," that "[t]he vehicle was not left in her possession[, and that] she did not own a set of keys." *Id.* ¶ 11. We concluded that the policyholder, the insured's mother, "could not have reasonably expected that she would have to pay additional premiums for [her daughter's] use of [the boyfriend's] vehicle." *Id.*

---

[5] Those factors are

> (1) blanket permission to use the car rather than having to ask permission for each use; (2) availability of a set of keys to the car; (3) continuous, steady, methodical use as opposed to occasional or special use; (4) the nature of the use (e.g. use for all purposes rather than solely business use); and (5) that the insured would reasonably have expected to pay an extra premium to cover the use of the car.

*Amica Mut. Ins. Co. v. Franklin*, 147 F.3d 238, 242 (2d Cir. 1998).

[¶17]   Here, the facts are more similar to those in *Allstate*, where the exclusion applied, than to those in *Mascis*, where the exclusion did not apply. From at least when Lowe's car broke down in December until when the accident occurred in January, Lowe used Larson's car as though it was her own, including by giving Larson rides.  Lowe was given the only set of keys, she kept the vehicle at her house, and she paid for the gas most of the time. There is no evidence that she had to ask permission to use Larson's car, and she used it to accomplish her daily transportation needs—for instance, to travel to and from work, to visit friends and family, to go tanning, and to go to the gym.

[¶18]   Considering together all of the facts relevant to Lowe's use of Larson's vehicle, we cannot conclude that the record on summary judgment generates a triable contention that Lowe's use was "occasional or incidental," *id.* (quotation marks omitted), or "infrequent or merely casual," *Allstate*, 263 A.2d at 82 (quotation marks omitted).[6]  This is so even to the extent that Lowe's freedom of use was encumbered by her agreement to give Larson

---

[6]  Although the Estates assert that the "principal purpose of the arrangement" was to benefit Larson, the undisputed facts reveal that the arrangement was mutually beneficial because it provided for both (1) rides for Larson while his license was suspended and (2) Lowe's sole means of transportation while her car was not working.  There is no evidence indicating that either purpose was primary.  Moreover, given the nature of Lowe's use in this case, the fact that the arrangement benefited Larson is not the "controlling factor in determining 'regular use,'" *Allstate Ins. Co. v. Gov't Emps. Ins. Co.*, 263 A.2d 78, 82 (Me. 1970) (quotation marks omitted).

rides. *See id.* at 81 ("A use may be a 'regular use' even though some restrictions or limitations are imposed on the use."). Here, as in *Allstate*, *id.* at 81, 83, Stanley could reasonably have expected to pay an increased premium for Lowe's use of Larson's car as her only means of daily transportation. Requiring Amica to cover such use would alter the allocation of risk contemplated in the insurance contract between Amica and Stanley. *See id.*

[¶19] Contrary to the Estates' urging, we do not consider the duration of Lowe's use to be determinative in this case. Although the duration of use may be a factor in determining whether a "regular use" exclusion applies to the facts of a given case, *id.*, we decline to hold that "temporary" use cannot also be "regular," *see, e.g.*, *Amica Mut. Ins. Co. v. Franklin*, 147 F.3d 238, 242 (2d Cir. 1998) (holding that the exclusion applied where the insured "had unrestricted use of the car . . . [for] approximately two weeks," and *rejecting* the trial court's reasoning that the exclusion could not apply "where a car was available for a short and predetermined amount of time, even if the use during that period is unrestricted" (quotation marks omitted)). Here, Lowe used Larson's car as if it was her own for at least the two weeks between when her car broke down and when the accident occurred. Although Larson and Lowe considered their arrangement to be "temporary," there is no evidence

12

suggesting whether or when Larson's driver's license would be reinstated or Lowe's own vehicle would be fixed. *See id.* at 243 (holding that the exclusion applied where "[t]here was no indication that [the insured's] use of the car would end within weeks or even months"). Given the other undisputed facts characterizing Lowe's use of Larson's vehicle in this case, the fact that the accident occurred only two weeks after Lowe's car broke down does not alter our conclusion that the regular use exclusion in Stanley's policy applies to preclude coverage for Lowe's use of Larson's car. *See* 8A Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 121:71 at 121-95 (3d ed. 2005) ("It is the nature of the use for which the vehicle is intended and to which it is put, rather than the actual duration of use, which is significant."). We therefore conclude that the trial court did not err when it entered summary judgments in Amica's favor on the Estates' reach-and-apply complaints.

The entry is:

Judgments affirmed.

Steven D. Silin, Esq., and Robert H. Furbish, Esq. (orally), Berman & Simmons, P.A., Lewiston, for appellant Estate of Rebecca L. Mason

Sheldon J. Tepler, Esq., Hardy Wolf & Downing, Lewiston, for appellant Estate of Logan Dam

Martica S. Douglas, Esq. (orally), Douglas, Denham, Buccina & Ernst, Portland, for appellee Amica Mutual Insurance Company

Oxford Superior Court docket numbers CV-2014-31 and -32
FOR CLERK REFERENCE ONLY