## UNION MUTUAL FIRE INSURANCE COMPANY

v.

## COMMERCIAL UNION INSURANCE COMPANY, et al.

Supreme Judicial Court of Maine.

Argued Jan. 8, 1987.
Decided Feb. 25, 1987.

Petruccelli, Cohen, Erler and Cox, Gerald F. Petruccelli (orally), Portland, for plaintiff.

Fitzgerald, Donovan & Conley, Constance P. O'Neil (orally), Bath, Norman & Hanson, James D. Poliquin (orally), Portland, for defendant.

Before McKUSICK, C.J., NICHOLS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

SCOLNIK, Justice.

The United States District Court for the District of Maine has certified to us two questions of state law pursuant to 4 M.R.S.A. § 57 (Supp.1986) and M.R.Civ.P. 76B. The requirements for our acceptance of these questions have been met. *See Hiram Ricker & Sons v. Students International Meditation Society*, 342 A.2d 262, 264 (Me.1975).

### I. *Factual Background*

The factual background and procedural history in this case may be summarized as follows: On January 2, 1985, Clifford Winter and Robert Sanford, both Maine residents, traveled to Maryland in Sanford's station wagon on a hunting trip. The following morning, the two men met their guides at the designated hunting area, loaded their shotguns upon sighting geese, but fired no shots. They were then called back to their car by the guides to depart for a second hunting area. Winter unloaded his gun before seating himself in the right front passenger seat. Sanford, however, placed his loaded shotgun in the back seat of the vehicle, with the gun pointing toward the rear door on the passenger side. The safety mechanism of the shotgun was in an off position. Upon reaching the second hunting area, Winter got out of the vehicle on the passenger side and walked toward the rear of the vehicle. Sanford got out on the driver's side, opened the left rear door, and reached for his shotgun. The gun accidentally discharged upon being grasped by Sanford, resulting in injuries to Winter.

Sanford was insured at all relevant times under two insurance policies. One policy was issued by defendant Commercial Union Insurance Company (Commercial Union). The Commercial Union automobile policy stated that the insurer would "pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident." The term "covered person" is defined as the named insured or any family member "for the ownership, maintenance or use of any auto or trailer."

The second policy was issued to Sanford by the Plaintiff, Union Mutual Fire Insurance Company, (Union Mutual). The Union Mutual homeowner's policy covered claims against the insured for "damages because of bodily injury," but excluded coverage for claims "arising out of the ownership, maintenance, use, loading or unloading of: ... a motor vehicle owned or operated by ... any insured." The liability coverage limit of each policy is $100,000. Both policies obligate the insurer to defend the insured against covered claims.

Winter subsequently filed a complaint against Sanford in Superior Court, seeking

damages for personal injuries resulting from Sanford's alleged negligence. Sanford notified the two insurers of the pending state court action, demanding that they defend and indemnify him. Although Commercial Union refused to defend or indemnify Sanford, Union Mutual undertook his defense, reserving all rights under its policy and informing Sanford and Commercial Union of its position. Acting on behalf of Sanford, Union Mutual settled with Winter in an amount stipulated by the insurers to be reasonable.

Union Mutual filed a complaint in the United States District Court for the District of Maine, seeking declaratory relief against Commercial Union and Sanford. After both insurers moved for summary judgment, it was agreed that there were no genuine issues of material fact. The following issues of law were certified by the federal court to resolve the question of coverage under the two policies:

(a) Does the clause in the Commercial Union Insurance Company policy, providing coverage for accidents arising from "the ownership, maintenance or use of any auto," include coverage for personal injuries resulting from the accidental discharge of a firearm while being removed for hunting purposes from an insured vehicle?

(b) Does the clause in the Union Mutual Fire Insurance Company policy, excluding coverage for accidents arising from the "use, loading or unloading" of a vehicle, exclude coverage for personal injuries resulting from the accidental discharge of a firearm while being removed for hunting purposes from an insured vehicle?

We answer both questions in the affirmative.

## II. *Commercial Union Policy*

It has long been the rule in Maine that insurance policies are to be liberally construed in favor of the insured and strictly construed against the insurer that drafted the policy. *Bartlett v. Union Mutual Fire Ins. Co.*, 46 Me. 500, 502 (1859); *see also Baybutt Construction Corp. v. Commercial Union Ins. Co.*, 455 A.2d 914, 921

(Me.1983). Any ambiguity in the contract is resolved against the insurer. *Allstate Ins. Co. v. Elwell*, 513 A.2d 269, 271 (Me. 1986); *Baybutt*, 455 A.2d at 921. In applying these rules of construction to the instant case, the contract language is to be viewed from the perspective of an average person untrained in either the law or the insurance field "in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured." *Id.*, quoting *Brown v. City of Laconia*, 118 N.H. 376, 386 A.2d 1276, 1277 (1978).

The Commercial Union policy in the present case employs the word "use" in an ambiguous manner. The word "use" is a general catch-all term, encompassing all proper uses of a vehicle. *See* 6B Appleman, *Insurance Law and Practice* (Buckley ed.), § 4316 (1979). We have previously interpreted the "use," as distinguished from the "operation" of a vehicle, in the context of an omnibus clause of an insurance contract, as contemplating a broad construction of that term:

> ... the words *use* and *operation* are not synonymous. The *use* of an automobile denotes its employment for some purpose of the user; the word *operation* denotes the manipulation of the car's controls in order to propel it as a vehicle. *Use* is thus broader than *operation* ... One who operates a car uses it, ... but one can use a car without operating it.

*Allstate Insurance Co. v. Lyons*, 400 A.2d 349, 352 (Me.1979), quoting *Indemnity Insurance Co. v. Metropolitan Casualty Insurance Co. of New York*, 33 N.J. 507, 166 A.2d 355, 358 (1960) (emphasis in original); *see also Taylor v. United States Fidelity & Guaranty Co.*, 519 A.2d 182 (Me.1986).

In determining whether a particular injury is within the meaning of the "ownership, maintenance or use" clause of an insurance policy, the cases are in general agreement that a causal relationship must exist between the accident or injury and the ownership, maintenance or use of the vehicle. *See* Annotation, *Automobile Liability Insurance: What are Accidents or Injuries "Arising out of Ownership, Maintenance, or Use" of Insured Vehicle,*

15 A.L.R. 4th 10 (1982). The causal relationship between the proper use of the vehicle and subsequent injury need not be the proximate cause of the injury; coverage will be extended if there is a reasonable causal connection between the use and the injury. *Id.* A determination of whether a causal relationship existed turns on the facts of each particular case. Our inquiry is therefore limited to whether under these facts, the negligent act on the part of the insured causing the accidental discharge of the firearm may be considered a reasonable incident of the use of the vehicle, leading to the reasonable expectation on the part of the insured that the resulting injury constituted a protected risk under the policy.

█ The vehicle in the instant case was being used to transport the two men and their firearms for the purpose of hunting. The utilization of the vehicle for a hunting trip constitutes a proper "use" of the vehicle within the meaning of the Commercial Union policy. Incidental to that use, it was necessary, reasonable and foreseeable that the weapons would be placed into and removed from the vehicle at some point during the course of the expedition. The "loading or unloading" of a firearm into or from a vehicle is a reasonable and proper use of the vehicle in this context.[1] Because the injury occurred during the "unloading" of the gun from the vehicle, the requisite causal connection is present. This relationship was sufficient to afford coverage under the Commercial Union policy provision.[2]

---

1. The fact that the Commercial Union policy did not specifically define the term "use" in terms of "loading and unloading" does not change our analysis. We note that "[t]here is adequate precedent for the view that when the policy is silent on the point, loading and unloading is 'using' an insured motor vehicle." *American Oil Co. v. Hardware Mutual Casualty Co.,* 408 F.2d 1365, 1368 (1st Cir.1969). Sanford's removal of the shotgun from the vehicle in the present case constituted the "unloading" of the vehicle within the plain meaning of that term.

2. *See e.g., Laviana v. Shelby Mutual Ins. Co.,* 224 F.Supp. 563 (D.Vt.1963); *Allstate Ins. Co. v. Valdez,* 190 F.Supp. 893 (E.D.Mich.1961); *Allstate Ins. Co. v. Truck Ins. Exch.,* 63 Wis.2d 148, 216 N.W.2d 205 (1974); *Morari v. Atlantic Mutual Fire Ins. Co.,* 105 Ariz. 537, 468 P.2d 564 (1970);

## III. *Union Mutual Policy*

Exclusionary provisions in insurance contracts, such as the one in the Union Mutual homeowner's policy, are ordinarily construed strictly against the insurer and liberally in favor of the insured. *Baybutt,* 455 A.2d at 921. Coverage under the policy will be excluded "*only where*" such separately stated 'exclusions,' when viewed as a whole, unambiguously and unequivocally negate coverage." *Id.* (emphasis in original). The rule requiring a strict construction against the insurer and a liberal construction in favor of the insured "is not applicable unless there is ambiguity in the terms of the policy. The terms of the policy are to be taken and understood in ordinary sense." *Unobskey v. Continental Ins. Co.,* 147 Me. 249, 255–256, 86 A.2d 160, 163 (1952).

█ The terms "loading or unloading" in the Union Mutual policy exclusionary provision are unambiguous, and must therefore be given their plain and ordinary meaning. Under the facts of the instant case, the insured was removing cargo (i.e., his shotgun) from his vehicle, or "unloading" the vehicle. The insured's negligent placement of the loaded firearm in the vehicle, together with his carelessness in unloading the vehicle, provide a sufficient causal connection between the act of unloading and the consequent injury. In interpreting a similar exclusionary provision in *Morari v. Atlantic Mutual Fire Ins. Co., supra,* the Supreme Court of Arizona analyzed a factually analogous situation as follows:

*Toler v. Country Mutual Ins. Co.,* 123 Ill.App.3d 386, 78 Ill.Dec. 790, 462 N.E.2d 909 (1984); *Travelers Ins. Co. v. Aetna Casualty & Surety Co.,* 491 S.W.2d 363 (Tenn.1973); *Viani v. Aetna Ins. Co.,* 95 Idaho 22, 501 P.2d 706 (1972), *overruled on other grounds, Sloviaczek v. Estate of Puckett,* 98 Idaho 371, 565 P.2d 564 (1977). Because of the existence of the causal relationship between the use of the vehicle and resulting injury, the instant case is distinguishable from those cases in which the vehicle involved was merely the "situs" of the resultant injuries. Those cases typically involve the accidental discharge of a firearm inside the vehicle in which an occupant of the vehicle is handling or toying with the weapon. *See Cameron Mutual Ins. Co. v. Ward,* 599 S.W.2d 13, 15 (Mo.App.1980) and cases cited therein.

The unloading does not have to be the cause in the sense of proximate cause of the accident. The accident need only be connected with the unloading. [The insured's] act in keeping the gun loaded and not on safety created a dangerous condition from which reasonable men might conclude greater care in its subsequent handling was required in order to prevent its accidental discharge. No doubt the rifle could have been removed from the truck with such care that [the defendant] would not have been injured. The careless use in connection with the unloading was the negligent act from which the injury stemmed.

*Id.*, 468 P.2d at 566; *see also* Annotation, *Construction and Effect of Provision Excluding Liability for Automobile-Related Injuries or Damage from Coverage of Homeowner's or Personal Liability Policy*, 6 A.L.R. 4th 555 (1981); Annotation, *Risks Within "Loading and Unloading" Clause of Motor Vehicle Liability Insurance Policy*, 6 A.L.R. 4th 686 (1981). We conclude that under the present facts, coverage for the injuries "arising out of the ... use, loading or unloading" of the insured vehicle is excluded under the Union Mutual policy.

For the foregoing reasons, we answer both certified questions in the affirmative.

All concurring.