PEERLESS INSURANCE CO.

v.

Clair D. WOOD.

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 16, 1996.

Decided Nov. 18, 1996.

Anne M. Carney, James D. Poliquin, Norman Hanson & Detroy, Portland, for Plaintiff.

Warren M. Silver, Bangor, for Defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

Plaintiff, Peerless Insurance Company ("Peerless"), appeals from the judgment entered in the Superior Court (Cumberland County, *Saufley, J.*) declaring that the actions of Kenneth Hirst, an employee of the insured Hofsaes Construction Company ("Hofsaes"), are covered by a comprehensive contractor's policy issued by Peerless. On appeal, Peerless argues that the Superior Court erroneously interpreted the exception in its policy providing coverage for the "occasional and infrequent use" of certain non-owned commercial vehicles. Finding no error, we affirm the judgment.

The facts, as found by the court, may be summarized as follows: While driving in his own truck to the Bangor Mall to purchase some forms at the request of his supervisor, Hirst struck a vehicle driven by Christine Wood. Wood died as a result of this accident. Her husband, Clair D. Wood, filed a wrongful death action against both Hirst and Hofsaes, his employer. Hofsaes is insured pursuant to a comprehensive contractor's policy issued by Peerless. Peerless responded with this declaratory judgment action in the Superior Court naming Hirst, Hofsaes, and Wood as defendants, and seeking a determination of its obligation to defend or

indemnify Hofsaes under the terms of its policy. The parties then settled the underlying action. Hirst and Hofsaes were released from Wood's claims and dismissed as defendants in the present action after assigning their rights to Wood. Thus, the question is purely one of coverage under the terms of the policy.

The comprehensive contractor's liability policy issued by Peerless provides coverage for bodily injury liability incurred by any employee of Hofsaes "while acting within the scope of his duties as such." Exclusion B of the policy, however, excludes from coverage "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile or aircraft owned or operated by or rented or loaned to any insured." Nonetheless, this exclusion "does not apply to . . . the occasional and infrequent use of a non-owned commercial automobile by an employee of the named insured" in the business of the named insured. Commercial automobile is defined as "an automobile of the truck type or other automobile designed for the transportation of material or merchandise over public roads."

Hirst was the owner of the Nissan pickup truck involved in the accident in this case. He used his truck to drive to the construction site in Brewer where he worked as a foreman. Hirst had worked at the site for a period of four months before the accident. During that time, he ran errands off the worksite for Hofsaes only twice. Hirst was required to use the tool box attached to the bed of his truck to keep safe a number of small, expensive tools that were susceptible to theft if left at the work site. He loaded these tools into his truck at night and locked them in until he removed them the next day. Hirst kept the tools in the box when he left the worksite and never took the tools out for use or storage at another site. His truck served as storage in lieu of a facility at the worksite.

One week before the accident, Hirst's supervisor asked him to pick up some forms at a stationery store in Bangor. On the evening of the accident, Hirst returned from the work site to his boarding house. He left the house for dinner but decided to pick up the forms for his supervisor and then look for a restaurant. He was on his way to the store when the accident occurred. The tools he stored for Hofsaes were in his truck at the time of the accident.

After a bench trial, the Superior Court held that Hirst was acting within the scope of his employment at the time of the accident and, thus, was an insured under the policy. The court also held that, because the incident involved bodily injury or property damage arising out of the operation and use of an automobile, Exclusion B applied. The court found, however, that Hirst's truck was a non-owned commercial automobile "used" in Hofsaes's business only on an occasional and infrequent basis. The truck's use at the time of the accident was held to be the type of use contemplated by the exception to Exclusion B and intended by the parties to be covered by the policy.

██ The meaning of the language used in an insurance contract is a question of law. *Globe Indem. Co. v. Jordan,* 634 A.2d 1279, 1282 (Me.1993); *Allstate Ins. Co. v. Government Employees Ins. Co.,* 263 A.2d 78, 80 (Me.1970). Insurance policies are liberally construed by this court in favor of the insured and any ambiguity in the contract is resolved against the insurer. *Union Mut. Fire Ins. v. Commercial Union Ins.,* 521 A.2d 308, 310 (Me.1987). In applying these rules of construction, we view the contract language from the perspective of an average person, untrained in either the law or the insurance field, in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured. *Id.*

At issue in this case is the application of the "occasional and infrequent use" exception to Exclusion B of Peerless's policy. The language of the exception states that Exclusion B does not apply to "the occasional and infrequent use of a non-owned commercial automobile by an employee of the named insured" in the business of the named insured. Peerless contends that liability for bodily injury caused by a non-owned commercial automobile does not fall within this exception if that automobile is used frequently for any purpose in the insured's business. Because Hirst's truck was routinely used by

Hofsaes for tool storage, Peerless argues that any liability incurred due to his accident with Christine Wood is not covered under the policy. We do not accept such a narrow construction of the exception.

In resolving liability coverage disputes involving homeowners and automobile insurers, we have previously addressed the ambiguities that arise when coverage is defined in terms of the "use" of a vehicle. *Union Mutual*, 521 A.2d at 310–312; *Worcester Ins. v. Dairyland Ins.*, 555 A.2d 1050, 1052 (Me. 1989) (*citing Union Mutual*, 521 A.2d at 311–312); *Maine Mut. Fire v. Amer. Int'l Underwriters*, 677 A.2d 1073, 1075 (Me.1996). Language granting or excluding coverage for automobile "use" has been interpreted to grant or exclude coverage only for those accidents or injuries that an insured would reasonably have expected to be covered or excluded under the policy. *Union Mutual*, 521 A.2d at 311. This has been accomplished by requiring a causal relationship between the accident or injury and the particular use of the vehicle at the time of that accident. *See e.g. Worcester Ins.*, 555 A.2d at 1052 ("It is the activity in which the insured is engaged at the time [of the injury] that provides the temporal and spatial nexus that is determinative of the application of this exclusion in a homeowner's insurance policy.").

■ These same principles are applicable in deciding whether the frequent "use" of Hirst's truck for storage precludes coverage under the Peerless policy when that "use" had no causal relationship to the injury in question. In addition, the exception to Exclusion B of Peerless's policy must be interpreted in light of the risks assumed by the parties. *Cf. Allstate Ins.*, 263 A.2d at 81 (interpreting phrase "regularly furnished for use"). Hofsaes is covered for auto-related liability if it is causally related to an occasional and infrequent use of a non-owned commercial automobile. Hofsaes has, however, assumed any risks created by the frequent use of such a vehicle, such as the use of Hirst's truck for storage purposes in the present case.[1] The injury in question resulted from the operation of Hirst's truck, an infrequent use of the truck in Hofsaes's business. Thus, the risk of that injury was assumed by Peerless and is covered under its policy.

The entry is:

Judgment affirmed.

All concurring.

---

1. Peerless argues that transportation from the site each evening was the "essence" of Hirst's use of his truck to safeguard the tools and, thus, that this activity was causally related to the injury. The fact that the tools were transported from the site each night was merely the inevitable result of using a tool box attached to an employee's truck for storage. The court was not required to find that Hofsaes frequently used the truck for transportation within the meaning of the policy.