1997 ME 230

**YORK INSURANCE GROUP OF MAINE**

v.

**Carol VAN HALL.**

Supreme Judicial Court of Maine.

Argued Sept. 3, 1997.

Decided Dec. 12, 1997.

---

Noah D. Wuesthoff (orally), Monaghan, Leahy, Hochadel & Libby, Portland, for plaintiff.

Joseph L. Ferris (orally), Ferris, Dearborn & Willey, Brewer, for defendant.

Paul F. Macri, Berman & Simmons, P.A., Lewiston, for amici curiae Mary Tremblay.

Laurence H. Leavitt, Freidman, Babcock & Gaythwaite, Portland, for amici curiae Middlesex Mutual Assurance Co.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

[¶ 1] Carol Van Hall appeals from a summary judgment entered in the Superior Court (Cumberland County, *Brennan, J.*) in favor of York Insurance Group of Maine contending that the trial court erred when it determined as a matter of law that she was not entitled to deduct a proportionate share of her attorney fees from the funds due to York pursuant to the subrogation clause of her automobile insurance policy. We agree and vacate the judgment.

[¶ 2] Following her automobile accident, York paid $5,000 toward Van Hall's medical expenses pursuant to the medical payment provision of her automobile insurance policy. Van Hall later settled her claim against the responsible third party for $65,000 and signed a general release. After settlement York requested reimbursement from Van Hall for the $5,000 medical payment pursuant to the insurance contract's subrogation provision.[1] Van Hall and her attorney ten-

---

1. The relevant contract provision states:

   **OUR RIGHT TO RECOVER PAYMENT**

   A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

   1. Whatever is necessary to enable us to exercise our rights; and

dered $3,350 to York, retaining one-third ($1,650) as a prorated share of legal fees and costs. York refused the offered payment and filed a complaint in the Superior Court seeking a declaratory judgment that it had a legal right pursuant to the insurance policy to recover the full $5,000. At the conclusion of discovery, both parties filed motions for a summary judgment. After hearing the court granted a summary judgment to York and ordered Van Hall to pay $5,000 to York.

■ [¶ 3] We review the entry of a summary judgment for errors of law, viewing the evidence in a light most favorable to the party against whom the judgment was entered. *Kandlis v. Huotari*, 678 A.2d 41, 42 (Me.1996). A party is entitled to a summary judgment if there is no genuine issue of material fact and the party on the undisputed facts is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Chadwick–BaRoss, Inc. v. T. Buck Constr., Inc.*, 627 A.2d 532, 534 (Me.1993).

■ [¶ 4] Van Hall asks us to adopt the "common fund" doctrine in Maine.[2] We do so and join the majority of jurisdictions that have considered the issue.[3] The common fund doctrine provides that when a fund is created to which more than one party is entitled each party must pay a share of the expenses incurred in creating the fund, including reasonable attorney fees. *See Foremost Life Ins. Co. v. Waters*, 125 Mich.App.

799, 337 N.W.2d 29, 32 (1983). "Ordinarily, where [an] insured recovers a reimbursement of benefits for the no fault insurance company from a tortfeasor, the no fault insurance company is obligated to contribute to the payment of costs and attorney fees incurred by [the] insured in obtaining the reimbursement for the insurance company." 46A C.J.S. *Insurance* § 1636 (1993).

■ [¶ 5] We believe that adoption of the common fund doctrine in Maine will result in a more equitable relationship between an insurance company and its insured in cases such as this. As one commentator has stated:

> When an insurance company lays claim to subrogation proceeds, obviously someone has to collect them, and attorneys rarely work for free. It is grossly inequitable to expect an insured, or other claimant, in the process of protecting his own interest, to protect those of the [insurance] company as well and still pay counsel for his labors out of his own pocket, or out of the proceeds of the remaining funds. And this is precisely the view taken by the overwhelming majority of decisions, in that a proportionate share of fees and expenses must be paid by the insurer or may be withheld from its share.

8A John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 4903.85, at 335 (1981).[4]

---

**2.** Nothing after loss to prejudice them.
....
**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:
**1.** Hold in trust for us the proceeds of the recovery; and
**2.** Reimburse us to the extent of our payment.

**2.** We offer no opinion on Van Hall's argument that the subrogation clause should be held void as an unlawful assignment of a portion of a personal injury claim. Because Van Hall failed to direct the trial court's attention to this contention in her motion for a summary judgment, she failed to preserve the issue for appeal. *See Cuthbertson v. Clark Equipment Co.*, 448 A.2d 315, 317 n. 1 (Me.1982) (strict liability count in plaintiff's complaint could not be raised on appeal when it was not pursued before the trial court).

**3.** *See, e.g., Amica Mut. Ins. Co. v. Maloney*, 120 N.M. 523, 903 P.2d 834, 839 (1995). *See generally* 7 Am.Jur.2d *Attorneys at Law* § 241 (1980) (citing cases that recognize the fund doctrine in subrogated insurer cases as an exception to the general rule that an attorney cannot recover a fee against a third party benefitted by services rendered to a client); J.A. Bock, Annotation, *Subrogation Rights of Insurer Under Medical Payments Provision of Automobile Insurance Policy*, 19 A.L.R.3d 1054 (1968 & Supp.1996).

**4.** We note that the Legislature has also recognized the propriety of the common fund doctrine in this State and recently passed legislation requiring all future medical payment subrogation clauses to explicitly provide that an "insurer's subrogation right is subject to subtraction to account for the prorata share of the insured's attorney's fees incurred in obtaining the recovery from another source." P.L.1997, ch. 369, § 2 codified at 24–A M.R.S.A. § 2910–A (Pamph. 1997).

[¶ 6] York acknowledges that the common fund doctrine is an exception to the rule that an attorney-client relationship is a prerequisite to an attorney's right to compensation. The insurance company contends, however, that even if the common fund doctrine is to be recognized in Maine, Van Hall has not met the requirements necessary to benefit from the doctrine. York relies on *In re Marriage of Meadows*, 492 N.W.2d 656 (Iowa 1992), for the proposition that in order for the doctrine to apply "notice must be given to the holder of subrogated interests that an action has been commenced and that, if the holder elects not to join the action, the court will be requested to charge the holder reasonable attorney fees for the service of collecting its subrogated interest." *Id.* at 658. York maintains that Van Hall never provided notice that she was acting for the benefit of York nor that she would request attorney fees if York did not join in the action against the third party. According to York, she therefore should not be entitled to the benefit of the doctrine. We disagree.

[¶ 7] The requirement of notice in common fund cases is necessary in order to protect the holder of a subrogated interest by giving the holder "the right to join the action and to be represented by legal counsel of its own choosing if it so elects." *State Farm Mut. Auto. Ins. Co. v. Geline*, 48 Wis.2d 290, 179 N.W.2d 815, 821 (1970). In the present case York had early notice that Van Hall had hired an attorney and was pursuing recovery from the alleged tortfeasor. York in fact communicated to Van Hall and her attorney its express desire to avoid joining in any action brought by Van Hall. We conclude that York's actual knowledge of Van Hall's intention to seek recovery from the tortfeasor was sufficient notice to York for purposes of the common fund doctrine. Particularized notice that Van Hall would seek to withhold attorney fees was not required in these circumstances.[5]

[¶ 8] We are unpersuaded by York's argument that allocation of attorney fees is precluded in this case by the terms of the insurance contract. Insurance policies are liberally construed in favor of an insured and any ambiguity in the contract is resolved against the insurer. *Peerless Ins. Co. v. Wood*, 685 A.2d 1173, 1174 (Me.1996). The meaning of language used in insurance contracts is a question of law. *Id.* The policy between York and Van Hall states: "If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall ... [r]eimburse us to the extent of our payment." Equivalent insurance contract provisions have been held to be ambiguous as to the issue "whether the insured, in the performance of [her] duty as a trustee to make a recovery of funds payable to the insurance company, is entitled to reimbursement for attorney fees and other expenses reasonably and necessarily incurred in making such a recovery." *State Farm Mut. Auto. Ins. Co. v. Clinton*, 267 Or. 653, 518 P.2d 645, 649 (1974). We agree with Van Hall that the contract provision at issue does not clearly address the question whether the insured is permitted to retain a prorated portion of the cost of recovery from its obligation under the contract's subrogation clause. We therefore construe that ambiguity against the insurance company and hold that the insured is entitled to reimbursement for its reasonable expenses incurred in recovering the insurer's subrogated interest.

[¶ 9] Accordingly, we hold that the common fund doctrine is available in Maine in cases where an insured incurs attorney fees and expenses in recovering a judgment or settlement that benefits a subrogated insurer. The determination of the share of attorney fees to be contributed by the insurer shall be within the discretion of the trial court. *See Foremost Life Ins. Co. v. Waters*, 125 Mich.App. 799, 337 N.W.2d 29, 33 (1983).

---

5. We also reject York's contention that its letter to Van Hall and her attorney informing them that it intended to pursue its subrogation interest independently insulates it from contributing to Van Hall's attorney fees. York did not exercise its right pursuant to M.R. Civ. P. 17(a) to bring suit against the tortfeasor in its own name and explicitly refused to intervene in Van Hall's action. By choosing to recover its subrogation interest from Van Hall's settlement, as it had every right to do according to the terms of the policy, York cannot now claim that it has no responsibility for contributing to the costs of that recovery.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

RUDMAN, Judge, dissenting.

[¶ 10] I respectfully dissent.

[¶ 11] There is no ambiguity in the language of the insurance contract. The policy provides

> If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:
>
> (i) hold in trust for us the proceeds of the recovery; and
>
> (ii) reimburse us *to the extent of our payment.*

(emphasis added).

[¶ 12] An insurance policy is a contract. *Ouellette v. Maine Bonding & Cas. Co.,* 495 A.2d 1232, 1234 (Me.1985) ("an insurance policy is a contract"). Unambiguous contractual language is interpreted according to its plain and commonly accepted meaning. *Seashore Performing Arts Ctr., Inc. v. Town of Old Orchard Beach,* 676 A.2d 482, 486 (Me.1996).

[¶ 13] With knowledge of her obligation to repay, Ms. Van Hall made a claim for medical payments pursuant to her automobile insurance policy. She, by contract, had agreed to reimburse her insurer to the extent of its payment should she recover damages from the person responsible for her injuries. She engaged the services of an attorney to represent her in the pursuit of her damages. She signed a contingency fee agreement with the attorney whereby she agreed to pay him "25% of the gross amount collected plus out-of-pockets if this matter is resolved prior to the commencement of litigation." She paid the attorney 25% of the amount she received in settlement of her claim. She then tendered to York Mutual $3,350 (the amount her insurer had paid to her less one-third of that amount). Ms. Van Hall urges the court to adopt the "common fund" doctrine. Ms. Van Hall seeks to have York pay her attorney for services rendered to her to enable her to fulfill her contractual obligation to York. She posits that to do otherwise would be "unjust."

[¶ 14] I question the wisdom of our rewriting an unambiguous contract between an insured and an insurer in a situation in which there was no showing either that Ms. Van Hall's attorney did not receive a reasonable fee for his services or that Ms. Van Hall in some way received less in settlement of her claim than she thought she would when she made her claim for reimbursement for her medical bills from her insurer and when she later signed a contingent fee agreement with her attorney. *See Theberge v. Darbro, Inc.,* 684 A.2d 1298, 1301 (Me.1996). Is it not unjust to deprive York Mutual of its contractual right to reimbursement in full? It based its premiums on that expectation. I would affirm the judgment of the Superior Court and leave the approval of the policy form to the Insurance Superintendent and to the Legislature to adopt the "common fund" doctrine as it appears to have done by its enactment of section 2910–A of Title 24–A of the Maine Revised Statutes. P.L.1997, ch. 369, § 2 (eff. Sept. 19, 1997). The legislative action, prospective in effect, gave insurers a chance to adjust their premiums.