STATE OF MAINE                           SUPERIOR COURT
CUMBERLAND, ss.                          CIVIL ACTION
                                         DKT. NOS. CV-18-426
                                                   CV-18-502


CONCORD GENERAL MUTUAL
INSURANCE CO.,

            Plaintiff
      v.
                              ORDER

MICHAEL GRINDEL, et al.,

            Defendants


_____

MICHAEL A. GRINDEL, Individually
and as Personal Representative of the
Estate of COLLETTE BOURE,

      Plaintiff,

v.                                              ORDER

21st CENTURY INSURANCE &
FINANCIAL SERVICES INC., et al.,

      Defendants.

REC'D CUMB CLERK'S C F:
FEB 24 '21 AM3:50

      Before the Court is a motion for summary judgment filed by 21st Century Insurance &

Financial Services, Inc. and 21st Century Centennial Insurance Company (collectively, "21st

Century"), the defendants in CV-18-502.

      21st Century seeks a summary judgment on the Second Amended Complaint filed by

Michael Grindel, individually and as Personal Representative of the Estate of Collette Boure

(collectively, the "Estate") in docket number CV-18-502. The court previously granted summary

1

judgment to Concord General Mutual Insurance Co. ("Concord") in the consolidated case of CV-19-426 on the same grounds that 21st Century raises in the pending motion. *See* Order dated March 3, 2020 in *Concord General Mutual Insurance Co. v. Grindel,* CV-18-426. As it did in response to Concord's motion, the Estate filed what purports to be a cross-motion for summary judgment but actually constitutes an argument that there are disputed issues of fact necessitating a trial.

Like many cases, this case has been delayed by the pandemic.[1] The court received the pending motions from the clerk's office and took them under advisement on September 8, 2020. Since then the court has had almost no time to devote to civil proceedings due to the pandemic and the need to focus on criminal cases. An unfortunate result in this case is that, now that the court has had time to review the motions with respect to the Estate's claim against 21st Century, it concludes that those motions present essentially the same issues as the Estate's claim against Concord and can be resolved on the same grounds.

The material facts as set forth in the court's March 3, 2020 order relating to Concord's summary judgment motion are incorporated in this order by reference.[2] In its case against 21st Century, the Estate seeks to recover under the uninsured/underinsured motorist ("UM") provision

---

[1] The court was prepared to enter final judgment in the companion case, *see* March 3, 2020 order at 11, but counsel for plaintiff requested that the court defer entry of judgment in CV-18-426 until CV-18-502 was also decided.

[2] The Estate objected to or denied a number of 21st Century's asserted statements of material fact, but the Estate has not generated a dispute of material fact as it pertains to the crucial facts recited in this order. The Estate's statement of material facts is nearly identical to the one submitted in response to Concord's motion for summary judgment. In fact, statements 1 through 77 are the same except for the addition of specific paragraph references to Michael Grindel's affidavit. Moreover, the Estate submitted the same affidavit and supporting exhibits in response to 21st Century's motion as it did in response to Concord's motion (including referring to the Concord policy). Both are dated September 13, 2019. In short, the Estate relies on the same factual basis in response to 21st Century's motion as it did in response to Concord's motion and that the court found was insufficient to generate a dispute of material fact with Concord's motion. The factual assertions in Grindel's affidavit are addressed in the March 3 order addressing Concord's motion at 9-11.

of the automobile policy issued by 21st Century to Nancy Snow ("Nancy"). Nancy was the owner of the vehicle taken by Alexander Meyers ("Alex") and Collette Boure ("Collette") on October 21, 2016 and the vehicle in which Collette was subsequently riding as a passenger when, following her cross-country trip with Alex, she suffered the injuries that resulted in her death.

The additional facts relevant to the UM claim against 21st Century as Nancy's insurer are the following: The only named insured on the 21st Century policy is Nancy. The only vehicle shown on the Declarations Page of that policy under "Description of Your Covered Auto(s)" is the 2014 Corolla in which Collette was a passenger when she suffered the injuries that resulted in her death. Nancy was Alex's great aunt, but she had only met Collette once or twice. Collette had never spent the night at Nancy's house. Neither Alex nor Collette had ever previously driven Nancy's vehicle. 21st Century SMF ¶¶ 28-29, 31, 33 (admitted). Neither Alex nor Collette had permission to use Nancy's vehicle. 21st Century SMF ¶ 34.[3]

The policy provides UM coverage for "compensatory damages that an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury caused by an auto accident with an uninsured motor vehicle." Policy, Part C, page 9 of 21. The policy defines "insured" for purposes of UM coverage to mean "you," any "family member," and "any other person occupying your covered auto." Id. The Estate argues that Collette was an insured for purposes of UM coverage because she was occupying the vehicle when she was fatally injured. It then argues that Alex was an uninsured driver, and that the Estate is therefore entitled to recover under 21st Century's UM coverage.[4]

---

[3] Although the Estate denied ¶ 34 of 21st Century's SMF, its denial was not supported by any citation to record evidence.

[4] The estate asserts its claim against 21st Century based in the UM coverage in the policy it issued to Nancy Snow. See, e.g., Second Amended Complaint filed December 4, 2019 ¶¶ 10, 12, 18, 22.

The key provisions of the policy are identical to the key provisions of Concord's policy upon which the court previously granted summary judgment to Concord. In the 21st Century policy, much like the Concord policy, "occupying" is defined to mean "in, upon, or getting in, on, out, or off." Policy (Page 2 of 21), Definitions § M. The 21st Century policy, much like the Concord policy, contains an exclusion stating that 21st Century would not "provide Uninsured Motorists Coverage for bodily injury sustained by an insured . . . [u]sing a vehicle without a reasonable belief that the insured is entitled to do so." Policy, Part C (Page 10 of 21), Exclusion B.3.[5] The policy does not define "use" or "using."

Put succinctly, 21st Century's motion leads to the same conclusion reached by the court on Concord's prior motion. Each policy contains an exclusion from coverage "for bodily injury sustained by an insured . . . [u]sing a vehicle without a reasonable belief that the insured is entitled to do so." Neither policy defines "using." Plaintiff has not offered any new facts that might change the conclusion in the March 3 order regarding whether Collette was "using" the vehicle and whether she could have had an objectively reasonable belief that she was entitled to use the vehicle as a passenger. *See Craig v. Estate of Barnes*, 1998 ME 110 ¶ 11, 710 A.2d 258 (citations omitted) ("[O]ne may use a motor vehicle without operating it. For example, a person may have an objectively reasonable belief that he or she is entitled to use a motor vehicle as a passenger.").

The Estate emphasizes Collette's mental health issues. For the reasons set forth in the March 3 order at 9-11, the Estate's factual assertions fall short of raising a disputed issue for trial. More importantly, the dispositive issue is whether Collette could have had an "objectively

---

[5] Exclusion B.3 goes on to provide that it does not apply to "a family member using your covered auto that is owned by you." However, there is no dispute that Collette was not a "family member" of Nancy's as defined in the policy because she was not related to Nancy by blood, marriage, or adoption and did not reside in Nancy's household. *See* Policy (page 1 of 21), Definition § H: "family member."

reasonable" belief that she was entitled to use the vehicle, and based on the undisputed facts it cannot be found that there is a genuine dispute of material fact on that issue.

21st Century is therefore entitled to summary judgment dismissing the Estate's Second Amended Complaint in CV-18-502.[6]

The entry shall be:

The motion for summary judgment by defendants 21st Century Insurance & Financial Services, Inc. and 21st Century Centennial Insurance Company in CV-18-502 is granted. The cross-motion for summary judgment by plaintiff Michael Grindel is denied. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: February 23, 2021

_____
Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 02/24/21

-Concord General Mutual Ins-Matthew Mehalic, Esq.
-Michael A Grindel/Estate of Colette Boure-Peter Clifford, Esq.
-21st Century Insurance/21st Century Centennial-David King, Esq. and Jonathan Hunter, Esq.

---

[6] The Estate's complaint also includes a claim under the Unfair Claims Settlement Practices statute, which has been ignored by the parties in their summary judgment submissions. However, the governing statute only provides a remedy for actions taken by the injured person's "own insurer," 24-A M.R.S. § 2436-A(1), and 21st Century was not the insurer of Collette Boure or Michael Grindel.

5

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NOS. CV-18-426
CV-18-502

CONCORD GENERAL MUTUAL
INSURANCE CO.,

Plaintiff

v.

ORDER

MICHAEL GRINDEL, as Personal
Representative of the Estate of
COLLETTE BOURE, et al.,

Defendants

MICHAEL GRINDEL, individually and as
Personal Representative of the Estate of
COLLETTE BOURE,

Plaintiff,

v.

21st CENTURY PREMIER INSURANCE
CO.,

Defendant

Concord General–Matthew Mehalic, Esq.
Michael A Grindel as PR of Estate–Peter Clifford, Esq.
Alexander Meyers–Pro Se
21st Century–Jonathan Hunter, Esq./David King, Esq.

In submitting its opposition to the motion for partial summary judgment by Concord General Mutual Insurance Co. in CV-18-426, the Estate of Collette Boure has filed certain psychological and school records of Collette Boure as Exhibits B through G to the affidavit of Michael Grindel.[1] The Estate has filed a motion to seal those records.

Counsel for Concord was provided with the records in question, and has not objected to the motion to seal.

---

[1] As far as the court can tell, Exhibit G is designated as Collette Boure's birth certificate but no copy of that document is actually contained in the Exhibits to the Grindel Affidavit that were filed with the court.

However, the court is not prepared to seal the documents in question. The Estate relies on those exhibits in opposing the motion for summary judgment. The Estate's Statement of Additional Material Facts dated September 19, 2019 cites repeatedly to the Grindel Affidavit. *E.g.,* Estate SAMF ¶¶ 13, 15, 16, 33, 34. Grindel is not an expert qualified to offer opinions as to his daughter's mental health but he makes various assertions as to her mental health, citing to the exhibits in question. The court has discussed those exhibits in ruling on the motion.

Court proceedings are presumptively open to the public, and with the exception of discovery materials, that presumption applies to pretrial motions as well as hearings and trials. This is particularly true of documents on which the court relies in determining litigants' substantive rights. *FTC v. Standard Financial Management*, 830 F.2d 404, 408 & n.4 (1st Cir 1987). The principle that court proceedings are open to the public is a fundamental tenet of our judicial system, protected by both the common law and the First Amendment. *See, e.g., Nixon v. Warner Communications*, 435 U.S. 589, 597 (1978); *Lugosch v. Pyramid Co.,* 435 F.3d 110, 119-21 (2d Cir. 2006) (strong presumption of public access applies to documents submitted to a court for consideration in a summary judgment motion); *FTC v. Standard Financial Management*, 830 F.2d at 408; *Publicker Industries v. Cohen,* 733 F.2d 1059, 1066 (3d Cir. 1984). The court does not believe that it should make decisions on a secret record or a record from which material portions have been withheld from public access unless a party seeking confidentiality can demonstrate strong countervailing interests, such as the need to protect trade secrets.

Private medical information is often entitled to confidentiality, particularly where the specific information in question is not relied on by the parties or the court and has not been put in issue in the litigation. In this case, however, the individual whose privacy interests are at stake is deceased. Moreover, the Estate has put Collette's psychological diagnoses and her mental health records in issue by asserting that she was mentally ill, by relying on those records to support that assertion, and by arguing that her mental health problems create factual issues that preclude summary judgment. Although the court has ruled against the Estate on that issue, it

2

cannot see a continued justification to seal the records on which the Estate has relied in opposing Concord's motion.

There are two exceptions to this ruling. Those exceptions are Exhibits E and F to the Grindel Affidavit, records which relate to a suicide attempt and subsequent hospitalization in 2015. The fact that those events occurred is independently established in the record, and the specific details of those events have not been relied upon by the parties or by the court in connection with the pending motion. The Estate's motion to seal is therefore granted as to Exhibits E and F.

The court is uncertain is to the extent to which the privacy rights of Collette Boure may be asserted after her death, so this ruling is without prejudice to reconsideration in the event of a request for access to those Exhibits.

The entry shall be:

The motion to seal by defendant Grindel in CV-18-426 is denied except as to Exhibits E and F to the Grindel Affidavit. Those two documents shall be sealed pending further order of the court. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: February 28, 2020

Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 03/04/20    mc/

REC'D CUMB CLERKS OF(
MAR 2 '20 PM3:20

3

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NOS. CV-18-426
CV-18-502

CONCORD GENERAL MUTUAL
INSURANCE CO.,

      Plaintiff

v.

                         ORDER

MICHAEL GRINDEL, as Personal
Representative of the Estate of COLLETTE
BOURE, et al.,

      Defendants

---

MICHAEL GRINDEL, individually and as
Personal Representative of the Estate of COLLETTE
BOURE,

      Plaintiff,

v.

21st CENTURY INSURANCE & FINANCIAL
SRRVICES INC., et al.,

      Defendants

Concord General–Matthew Mehalic, Esq.
Michael A Grindel as PR of Estate–Peter Clifford, Esq.
Alexander Meyers–Pro Se
21st Century–Jonathan Hunter, Esq./David King, Esq.

Before the court, in these consolidated actions, is a motion for partial summary judgment by Concord General Mutual Insurance Co. ("Concord"), the plaintiff in CV-18-426, and what purports to be a cross-motion for summary judgment by Michael Grindel, Personal Representative of the Estate of Collette Boure (the "Estate"), the defendant in CV-18-426.

Collette Boure died tragically on November 2, 2016 as a result of an automobile accident that took place on October 31, 2016 in Oklahoma. At the time of the accident she was a passenger in an automobile driven by Alexander Meyers under circumstances discussed in more detail below.

The dispute presented on the pending motions concerns whether the uninsured or underinsured motorist (UM) coverage in a Concord automobile insurance policy issued to Michael Grindel, Collette's father, applies to claims brought by the Estate of Collette Boure.[1]

Concord is seeking a declaratory judgment that its UM coverage does not apply and also seeks the dismissal of counterclaims brought by the Estate. Although the Estate has filed what it characterizes as a cross-motion, most or all of its arguments are directed to the contention that there are disputed issues of fact sufficient to require the denial of Concord's motion.

## Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Mahar v. StoneWood Transport*, 2003 ME 63 ¶ 8, 823 A.2d 540. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Kenny v. Department of Human Services*, 1999 ME 158 ¶ 3, 740 A.2d 560.

## The Underlying Facts

In this case determining the undisputed facts has been made difficult because both parties have made some factual assertions supported only by hearsay and because the Estate has made a

---

[1] The policy in question is contained in the summary judgment record as an exhibit to the affidavit of Arthur Skafidas, Director of Personal Lines Underwriting at Concord (Exhibit 4 to Concord's motion for summary judgment). Subsequent references to the policy will refer to the policy by section and the bates stamp number of the page where that section appears.

2

number of assertions without any factual support and has offered opinions as to Collette's mental state that are unsupported and are not offered by a qualified expert.

The basic facts leading up to death of Collette Boure (hereafter "Collette") may be summarized as follows:

Collette Boure was 17 years old at the time of her death on November 2, 2016. Her parents were divorced, and her father, Michael Grindel, had legal custody of Collette. She was living with her father and stepmother until mid-February of 2016, when she left because things were not working out.[2] The last night she spent at her father's residence was on February 13, 2016.

Collette thereafter lived with her mother for a while. By the summer of 2016, however, she was living with her boyfriend, Alexander Meyers ("Alex"), who was also under 18. Grindel did not have contact with his daughter from the time she left his residence in February 2016 until sometime in July, when he met her for lunch at Five Guys restaurant in Portland. That was the last time he saw her alive.

At some point, because Collette and Alex were charged as juveniles with some illegal activity, they were ordered not to have contact. Collette did not return to either her mother's residence or Grindel's residence but was admitted to a New Beginnings, a residential treatment program for juveniles. Notwithstanding the "no contact" condition, Collette and Alex had contact by telephone while she was at New Beginnings.

Sometime around October 9, 2016 Collette left New Beginnings after her mother signed her out for a visit. Collette took that opportunity to rejoin Alex.[3]

---

[2] Grindel testified that "we had her go stay with her mom," listing various reasons. Grindel Dep. 25, cited in Concord's October 11, 2019 Reply to Estate's Statement of Additional Material Facts ¶ 31.

[3] Grindel testified at his deposition that he understood Collette had manipulated her mother into signing her out from New Beginnings so she could meet up with Alex, which is consistent with Alex's testimony that the two of them devised a plan to get back together. Grindel Dep. 22, cited in Concord's October 11, 2019 Reply to Estate's Statement of Additional Material Facts dated September 19, 2019 (hereafter "Estate SAMF") ¶ 50; A. Meyers Dep. 56-57, cited in Estate SAMF ¶ 50.

3

At some point Collette and Alex decided to leave Maine so they could be together. On October 21, 2016 Alex and Collette went to the residence of Nancy Snow, Alex's great aunt. Nancy was not at home but she kept one of the keys to her vehicle in her residence. Collette boosted Alex up so he could enter the residence through a window. Collette entered the residence as well, and Alex took the key to the vehicle. They then left the house but returned later on and waited for Nancy to return in her vehicle. After she did, Alex unlocked the car, and they got in and drove away.

Nancy never saw Alex and Collette take her car, and she thereafter reported to the police that it was missing. She never gave either Alex or Collette permission to take or drive her car.[4]

Alex and Collette then left Maine in Snow's vehicle. Over the next two weeks they traveled to Florida, Michigan, Texas, Arkansas, and Oklahoma. Alex was the driver of the vehicle, but during their travels Collette took the wheel and drove in parking lots.

On October 31, 2016 with Alex driving and Collette in the front passenger seat, they became involved in a high speed chase in Oklahoma in which they were pursued by police vehicles. When Alex attempted to drive around a roadblock, he lost control of the vehicle and the vehicle hit a telephone pole.

Collette died two days later from injuries suffered in the crash. Alex subsequently pled guilty to manslaughter.

Discussion

Concord argues that based on the undisputed facts, it is entitled to a declaratory judgment that its UM coverage does not apply for three reasons.[5]

---

[4] Neither Alexander nor Collette had a driver's license.

[5] Although the parties do not address the issue, it appears that the prerequisites for UM coverage (an operator or a vehicle that is uninsured or underinsured) exist in this case. UM coverage applies, inter alia, when an insured is entitled to recover from the operator of a vehicle and the insurer of that vehicle denies coverage. Part C - Uninsured Motorist Coverage §C(4)(a), Policy at CGMI 0012. The insurer of Nancy Snow's vehicle is the defendant in CV-18-502 and has denied coverage.

4

The first is based on the principle that a person engaged in an illegal act is not entitled to recover for injuries sustained in the course of the illegal act. Concord notes that this principle has not been formally adopted in Maine although it derives some support from the Law Court's 1918 decision in *Cobb v. Cumberland County Power & Light*, 117 Me. 455, 462, 104 A. 844, 847 (1918).[6] Concord primarily relies on decisions in other jurisdictions, including *Lee v. Nationwide Mutual Insurance Co.*, 497 S.E.2d 328, 329 (Va. 1998), and *Parker v. Mid-Century Insurance Co.*, 962 P.2d 1114, 1116-17 (Kans. App. 1998).

Concord's second argument is that the Estate is not entitled to UM coverage because its policy excludes coverage for bodily injury sustained by an insured "using a vehicle without a reasonable belief that the 'insured' is entitled to do so." Part C - Uninsured Motorist Coverage, Exclusions § B(3), Policy at CGMI 0013.

Concord finally contends that Collette was not a resident of her father's household at the time of her death and therefore did not qualify as an "insured" under the Concord policy,[7] An "insured" includes any "family member." Part C - Uninsured Motorist Coverage, Insuring Agreement §B(1), Policy at CGMI 0012. "Family member" is defined to include "a person related by blood, marriage or adoption who is a resident of your household." Definitions § F, Policy at CGMI 0008 (emphasis added).

---

[6] In that case, the Law Court stated,"[T]he right of a person to maintain an action for a wrong committed upon him is not taken away because at the time of the injury he was disobeying a statute, provided this disobeyance in no way contributed to the injury." 117 Me. at 462 (emphasis added). Concord argues that Collette's participation in the theft and in the high-speed chase contributed to her injuries. The Estate contends that, if the illegality principle applies in Maine, there is a factual dispute as to the extent that Collette participated in the theft and the high-speed chase, and also contends that there was an insufficient causal connection between any illegal acts committed by Collette and her injuries.

[7] In its original motion for summary judgment, Concord reserved the issue of whether Collette qualified as an insured and initially relied instead on whether coverage was excluded because she had participated in the theft of the automobile and had no reason to believe she was entitled to use the vehicle. *See* Concord's Motion for Summary Judgment dated August 19, 2019 at 7 n.1. Subsequently Concord argued, in response to the Estate's cross motion, that it should also be granted summary judgment because Collette had left Grindel's residence and therefore no longer qualified as an "insured." The Estate argued that there were disputed issues of fact as to whether Collette remained a resident of Grindel's household at the time of her death, but it did not object to the fact that Concord raised the residency issue after its initial motion.

5

Because the illegality argument has not been adopted in Maine and because the motion can be decided on other grounds, the court will focus on Concord's second argument based on unauthorized use of the vehicle.

Unauthorized Use

Concord has offered undisputed evidence that Alex and Collette went to Nancy Snow's house when Snow was not present, that Collette boosted Alex up so he could enter the house through a window, that Alex then took a vehicle key from Snow's residence, and that they later waited for Snow to come home. Once Snow came home and left her vehicle in the driveway, Alex unlocked the vehicle and they drove away, with Alex driving and Collette in the passenger seat. Snow was not aware that anyone had taken the vehicle until she found it missing, and she had never given either Alex or Collette permission to drive or to take the vehicle. Concord SMF ¶¶ 10, 12, 17-18, 20.[8]

These actions were taken in accord with a plan by Alex and Collette to find a car and leave Maine so they could be together. Concord SMF ¶ 21. During the ensuing two weeks Alex and Collette then traveled in the vehicle across country to Florida, Michigan, Texas, Arkansas, and Oklahoma. Alex was the driver, but during their travels, Collette drove the vehicle in parking lots. Concord SMF ¶¶ 23, 24. Concord has offered unrebutted evidence that Alex and Collette "both made all of the decisions all the way through." Meyers Dep. 148, cited in Concord SMF ¶ 36.

The Estate has raised objections and qualifications to certain of the factual assertions cited above, but the court does not find any merit in the objections, and none of the qualifications raise material disputes. Given the facts thus established for purposes of summary judgment, the court finds that Concord has established for purposes of summary judgment that, assuming that she qualified as an insured under the policy, Collette either knew she was not

---

[8] References to "Concord SMF" refer to the statement of material facts submitted by Concord and dated August 19, 2019.

6

entitled to use the vehicle or lacked "objectively reasonable grounds" to believe that she was entitled to participate in taking the vehicle to leave Maine and travel across country. *See Craig v. Estate of Barnes,* 1998 ME 110 ¶¶ 7-8, 710 A.2d 258.

The Estate, however, argues that this does not justify a ruling in Concord's favor because the section B(3) exclusion from UM coverage only applies to an insured "using a vehicle without a reasonable belief that [she] is entitled to do so," and contends that Collette was occupying – but not "using" – the vehicle.

The Estate's argument that Collette was not "using" the vehicle even though she was a passenger in the vehicle is untenable. As the Law Court observed in *Craig v. Estate of Barnes,* 1998 ME 110 ¶ 10:

> [O]ne may use a vehicle without operating it. (citation omitted).
> For example, a person may have an objectively reasonable belief
> that he or she is entitled to use a motor vehicle as a passenger.

(emphasis added).

The Estate's argument is also undermined by the Law Court's decision in *Union Mutual Fire Insurance Co. v. Commercial Union Insurance Co.,* 521 A.2d 308 (Me. 1987). In that case the Law Court was construing a policy that covered claims against an insured or family member for the ownership, maintenance, or use of a vehicle. It stated that the word "use" is "a general catch-all term, encompassing all proper uses of a vehicle," 521 A.2d at 310, and added:

> the words *use* and *operation* are not synonymous. The *use* of an
> automobile denotes its employment for some purpose of the user;
> the word *operation* denotes the manipulation of the car's controls
> in order to propel it as a vehicle. *Use* is thus broader
> than *operation* . . . One who operates a car uses it, . . . but one can
> use a car without operating it.

*Id.*, quoting *Allstate Insurance Co. v. Lyons*, 400 A.2d 349, 352 (Me. 1979), and *Indemnity Insurance Co. v. Metropolitan Casualty Insurance Co. of New York*, 33 N.J. 507, 166 A.2d 355, 358 (1960)(emphasis in original).

While the Estate attempts to draw a distinction between occupying a vehicle and using a vehicle, the short answer is that when Collette was occupying the vehicle in the course of employing the vehicle for the purpose of leaving Maine to be with Alex, she was using the vehicle within the meaning of *Union Mutual*, 521 A.2d at 310 ("The use of an automobile denotes its employment for some purpose of the user).

In the *Union Mutual* decision the Law Court did say that the policy in question employed the word use "in an ambiguous manner." In that case, however, the issue was whether "use" of a vehicle encompassed the accidental discharge of a firearm being unloaded from a vehicle. To find "use" ambiguous in that context does not mean that there is any ambiguity as to whether "use" in this case includes Collette's employment of the vehicle for the purpose of leaving Maine and traveling around the country with her boyfriend.

Ambiguities in policy language are resolved in favor of coverage. *Metropolitan Property and Casualty Ins. Co. v. Estate of Benson*, 2015 ME 155 ¶ 8, 128 A.3d 1065. However, the rule requiring strict construction against the insurer is not applicable unless there is an ambiguity. *Union Mutual Fire Ins. Co. v. Commercial Union Ins. Co.*, 521 A.2d at 311. The Law Court has stated:

> In applying these rules of construction, we view the contract language from the perspective of the average person, untrained in either the law or the insurance field, in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured.

*Peerless Insurance Co. v. Wood*, 685 A.2d 1173, 1174 (Me. 1996). *Accord, Union Mutual Fire Ins. Co. v. Commercial Union Ins. Co.*, 521 A.2d at 310. Applying that principle of construction,

8

the average person would construe the actions of Collette as "using" the vehicle without a reasonable belief that she was entitled to do so.

The Estate's remaining argument on this issue is that Collette, according to her father, was mentally ill and had poor impulse control. *See, e.g.,* Estate SAMF ¶¶ 18, 33-34. Accordingly, the Estate argues, Collette cannot be held responsible for her unauthorized use of the vehicle, and her mental condition may have affected whether she had a reasonable belief that she was entitled to use the vehicle.

There are three problems with this argument. The first is that it depends on opinions expressed in the affidavit and deposition testimony of Grindel, who does not have any qualifications to offer expert medical or psychological opinions on the subject of his daughter's mental health or her ability to form a reasonable belief as to her authorization to use Snow's vehicle. In fact, Grindel does not offer any opinion that Collette was unable to understand whether or not she would have been entitled to use the vehicle. Instead he makes only a conclusory statement in his affidavit that she suffered from "severe mental illness," Grindel Affidavit¶ 4, and equally conclusory statements in his deposition that she had "a problem with emotional impulse control" and was "mentally ill." Grindel Dep. 24. Conclusory opinions that Grindel does not have any qualifications to offer do not constitute admissible evidence sufficient to generate a disputed issue of fact for trial.

As support for his opinion that Collette was "mentally ill," Grindel cites in his affidavit to "psychiatric records attached as Exhibit B." Grindel Affidavit ¶ 4. It bears emphasis that the Estates Statement of Additional Material Facts consistently cites only generally to Grindel's Affidavit ("Grindel Aff."). It does not provide paragraph references or specific references to any portions of the medical records even though Rule 56(h)(4) provides that the court shall have no

9

independent duty to search or consider any part of the record not specifically referenced in the parties' statements of material facts.

Leaving that aside, Exhibit B to Grindel's affidavit consists of psychological evaluations performed when Collette was 10 and 12 years old, which recite the following diagnoses: "Post-traumatic Stress Disorder, chronic; Attention Deficit Hyperactivity Disorder, combined type; Reactive Attachment Disorder; rule out Mood Disorder Not Otherwise Specified."[9] None of the records attached to Grindel's affidavit are authenticated as medical records that would be admissible under 16 M.R.S. § 357 or otherwise.

Even if these reports were admissible, they would not raise a factual dispute for trial. Persons with ADHD and the other disorders listed are not intrinsically unable to understand whether or not they are authorized to use a vehicle. The Estate has not offered any expert opinion or other evidence calling into question whether Collette could form a reasonable belief that she was entitled to use Snow's vehicle.

To be sure, the reports and other evidence in the summary judgment record indicate that Collette was a troubled young woman. For instance, she had made a suicide attempt sometime in 2015[10] and was at Spring Harbor on one or more occasions. Collette's psychological issues may in some part explain her behavior. However, none of the evidence offered by the Estate raises a disputed issue of fact as to Collette's ability to understand whether or not she was authorized to use Snow's vehicle.

---

[9] 2012 Report of clinical psychologist Lydia Ward-Gray, clinical psychologist and 2010 Report of clinical neuropsychologist Charles Whitehead. Other unauthenticated reports attached to Grindel's affidavit mention Depression as well as ADHD, Reactive Attachment Disorder, and Mood Disorder Not Otherwise Specified.

[10] Grindel's affidavit places the date of that attempt in August 2015, but the records he attaches on that subject (exhibits E and F to his affidavit) all appear to be dated from February 2015 rather than August.

10

The Estate's focus on Collette's mental state is misplaced for another reason. Under *Craig v. Estate of Barnes,* 1998 ME 110 ¶¶ 7-8, the issue is whether a person could have an "objectively" reasonable belief that she was entitled to use a motor vehicle. *Accord, Patrons Oxford Insurance Co. v. Harris,* 2006 ME 72 ¶ 9, 905 A.2d 819. Aside from their other deficiencies and even if adequately supported, all the Estate's arguments with respect to Collette's mental state relate to whether Collette might have had a subjectively – rather than an objectively – reasonable belief.

Finally, although the Estate also argues that a jury could find that Collette acted under duress, it has offered no evidence that could support that contention.

Concord therefore is entitled to partial summary judgment declaring that the UM coverage exclusion in § B(3) of the Concord policy precludes liability on the Estate's UM claim against Concord. In light of that ruling, the court does not need to consider Concord's alternative argument that it is undisputed that Collette did not qualify as an "insured" because, at after February 2016, she ceased to be a resident in Grindel's household.

As the court understands it, this decision necessitates the dismissal of the Estate's counterclaim against Concord. Alexander Meyers has also been named as a defendant by Concord on a claim for contribution or indemnity if Concord were to be found liable, but the court believes that the decision above also terminates Concord's contingent claim against Meyers.

If any party contends that a final judgment should not enter in CV-18-426, that party shall notify the court on or before March 16, 2020.

11

The entry shall be:

1. For the reasons stated above, the motion for partial summary judgment by plaintiff Concord General Mutual Insurance Co. in CV-18-426 is granted and a declaratory judgment is entered that the automobile policy issued by Concord to defendant Michael Grindel does not provide uninsured or underinsured motorist coverage applicable to the death of Collette Boure.

2. The cross-motion for summary judgment in CV-18-426 by defendant Michael Grindel, Personal Representative of the Estate of Collette Boure, is denied, and the Estate's counterclaim against Concord is dismissed.

3. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: ~~February~~ March 3, 2020

_____
Thomas D. Warren
Justice, Superior Court

REC'D CUMB CLERKS OFC
MAR 3 '20 PM1:36

Entered on the Docket: 03/04/20

12